**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DASYA MARÍA CORDOVA and ADA CASASUS, on behalf of themselves and a class and collective of similarly situated persons, <br><br> Plaintiffs, <br><br> – against – <br><br> EMBLEMHEALTH INC. and EMBLEMHEALTH SERVICES COMPANY, LLC, <br><br> Defendants. | Civil Action No. 22 Civ. 2933 <br><br> **COMPLAINT** <br><br> **<u>Jury Trial Demanded</u>** |

Plaintiffs Dasya María Cordova and Ada Casasus ("Plaintiffs"), on behalf of themselves and all other similarly situated persons, by and through their undersigned counsel Rahman Law P.C., as and for their Complaint in this action against Defendants EmblemHealth, Inc. and EmblemHealth Services Company, LLC (together, "Emblem" or "Defendants"), hereby allege as follows:

<u>**NATURE OF THE CLAIMS**</u>

1.      Plaintiffs bring this putative class and collective action to recover stolen overtime wages which Emblem unlawfully denied to scores of employees that it knowingly misclassified as overtime exempt for decades merely to save labor costs and fatten its bottom line profit margins pursuant to the overtime provisions of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law (the "NYLL") § 190 *et seq.*

2.      Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all other similarly situated persons who were employed by Emblem as a "Grievance and Appeal Specialist," "Senior Grievance and Appeal Specialist," and/or any similar position and were not paid overtime compensation for all hours

worked in excess of 40 in a week during the applicable limitations period (the "FLSA Collective Period"). Plaintiffs and all such other similarly situated persons are jointly referred to herein as the "FLSA Collective."

3.　　The members of the FLSA Collective are similarly situated because they all performed the same basic duties and assignments as Grievance and Appeal Specialists, Senior Grievance and Appeal Specialists, and/or any other similar positions and were all subject to Emblem's common policy and practice of improperly and unlawfully classifying them as exempt or otherwise excluded from the overtime provisions of the FLSA.

4.　　Emblem has willfully violated the FLSA during the FLSA Collective Period by failing to pay Plaintiffs and all other members of the FLSA Collective the prevailing one and one-half times their regular rates of pay for all hours worked in excess of 40 in a week.

5.　　Pursuant to Emblem's unlawful policies and practices, the members of the FLSA Collective have been improperly classified as exempt from the provisions of the FLSA and/or improperly denied overtime compensation to which they are entitled.

6.　　The FLSA Collective is entitled to recovery for all uncompensated overtime wages earned during the FLSA Collective Period, as well as an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b).

7.　　Because Emblem has willfully violated the FLSA, the three-year statute of limitations provided by the FLSA, at 29 U.S.C. § 255(a), applied to the claims of the FLSA Collective.

8.　　Plaintiffs also assert claims herein, on behalf of themselves and a class of all other similarly situated persons, pursuant to NYLL § 663, as well as 12 N.Y.C.R.R. § 142-2.2.

9. These class claims are brought pursuant to Federal Rule of Civil Procedure 23 and the NYLL by Plaintiffs on behalf of themselves and all other persons who were employed by Emblem as a "Grievance and Appeal Specialist," "Senior Grievance and Appeal Specialist," and/or other similar position and who worked in New York and/or had New York state income taxes withheld from their paychecks while working remotely outside of New York and who were not paid overtime compensation for all hours worked in excess of 40 in a week during the applicable limitations period (the "NYLL Class Period"). Plaintiffs and all such similarly situated persons are hereinafter referred to jointly as the "NYLL Class."

10. The NYLL Class is entitled to recovery for all uncompensated overtime wages during the NYLL Class Period as well as an equal amount in liquidated damages pursuant to the NYLL.

11. The NYLL Class is also entitled to statutory penalties pursuant to NYLL § 195 for Emblem's failure to issue them accurate wage notices and furnish accurate wage statements/paystubs.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Plaintiffs', the FLSA Collective's, and the NYLL Class's rights under the FLSA. The Court has supplemental jurisdiction over Plaintiffs' related claims arising under New York law pursuant to 28 U.S.C. § 1367(a).

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because: (i) Emblem resides in this district; and (ii) a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

14.    Plaintiffs' claims are properly consolidated as a single action because their claims arise from the same nexus of facts, parties, and circumstances, and involve nearly identical issues of fact and law.

**PARTIES**

15.    Plaintiff Dasya María Cordova is an adult resident of the state of Florida and has been employed by Emblem since 1998.  Between 2009 and December 2014, Ms. Cordova was a Grievance and Appeal Specialist at Emblem.  Since December 2014, Ms. Cordova has been a Senior Grievance and Appeal Specialist.  At all relevant times, Ms. Cordova performed her work for Emblem, which is headquartered in New York, remotely from her home in Florida, but was a New York state employee under all relevant statutes who, *inter alia*, had New York State income taxes and New York Paid Family Leave Act insurance payments withheld from her bi-monthly paycheck.  Moreover, Ms. Cordova's main job duty at Emblem has been to process grievances and appeals related to health insurance claim determinations submitted by medical providers operating primarily, if not exclusively, in the state of New York.  Accordingly, at all relevant times, Ms. Cordova was an "employee" within the meaning of both the FLSA and NYLL.  A Consent to Participate as a Plaintiff in this action executed by Ms. Cordova will be filed with the Court.

16.    Plaintiff Ada Casasus is an adult resident of the state of Florida and has been employed by Emblem since 2007 as a Grievance and Appeal Specialist.  At all relevant times, Ms. Casusus performed her work for Emblem, which is headquartered in New York, remotely from her home in Florida, but was a New York state employee under all relevant statutes who, *inter alia*, had New York State income taxes and New York Paid Family Leave Act insurance payment withheld from her bi-monthly paycheck.  Moreover, Ms. Casasus's main job duty at

Emblem has been to process grievances and appeals related to health insurance claim determinations submitted by medical providers operating primarily, if not exclusively, in the state of New York.  Accordingly, at all relevant times, Ms. Casasus was an "employee" within the meaning of both the FLSA and NYLL.  A Consent to Participate as a Plaintiff in this action executed by Ms. Casasus will be filed with the Court.

17.     Defendant EmblemHealth, Inc. is a New York not-for-profit corporation with its headquarters at 55 Water Street, New York, NY 10041.  At all relevant times, Defendant EmblemHealth, Inc. was an "employer" within the meaning of the FLSA and NYLL, and an enterprise engaged in commerce as defined by § 203(r) and (s) of the FLSA, with annual gross volume business done in an amount not less than $500,000.

18.     Defendant EmblemHealth Services Company, LLC is a Delaware limited liability corporation with its headquarters at 55 Water Street, New York, NY 10041.  At all relevant times, Defendant EmblemHealth Services Company, LLC was an "employer" within the meaning of the FLSA and NYLL, and an enterprise engaged in commerce as defined by § 203(r) and (s) of the FLSA, with annual gross volume business done in an amount not less than $500,000.

19.     Emblem is one of the United States' largest nonprofit health plans.  Emblem is a multi-billion-dollar company with over three million members.

20.     At all relevant times and under all relevant statutes, Defendants employed or jointly employed Plaintiffs and similarly situated Grievance and Appeal Specialists, Senior Grievance and Appeal Specialists, and/or similar positions.

## FACTUAL ALLEGATIONS

21.     Plaintiff Cordova has been employed by Emblem for 23 years.  She was a Grievance and Appeal Specialist from 2009 to December 2014, and then a Senior Grievance and Appeal Specialist from December 2014 to the present.  Under both titles, however, Ms. Cordova's primary duties and responsibilities remained the same.   In 1985, Ms. Cordova obtained a degree from a technical school in the Dominican Republic that is roughly the equivalent of an associate's degree here in the United States.  She does not hold any higher degrees or any specialized certifications in medicine, healthcare, or any other science-related field.  Her current salary is approximately $57,000.

22.     Plaintiff Casusus has been employed by Emblem for 15 years and has been a Grievance and Appeal Specialist since approximately 2007.   Ms. Casusus holds a bachelor's degree in business science.  She does not hold any higher degree or any specialized certifications in medicine. healthcare, or any other science-related field.  Her current salary is approximately $54,000.

23.     To be eligible to become a *Senior* Grievance and Appeal Specialist, Emblem requires only a bachelor's degree and two years of work experience in a health maintenance organization ("HMO") environment.  However, Emblem waives the bachelor's degree requirement if the person has a two-year degree and four years of experience in an HMO environment.  The requirements to become a Grievance and Appeal Specialist are of course less stringent.

24.     At all relevant times, Ms. Cordova and Ms. Casasus both regularly worked more than 40 hours a week at Emblem without being paid any premium overtime wages of one and one-half times their regular rate of pay.  In fact, Ms. Cordova and Ms. Casusus have often

worked as much 60-70 hours in a week, if not more.  Indeed, there would be days where Plaintiffs would have to begin working as early as 7:30am (if not earlier) and would not finish work until 10:00pm (or later) just to meet their performance expectations and requirements.

25.    At all relevant times, the primary job duties of Appeal and Grievance Specialists and Senior Appeal and Grievance Specialists were materially the same.

26.    At all relevant times, Plaintiffs' primary duties were to process appeals and grievances related to health insurance claim determinations (*i.e.*, if a claim was denied in whole or in part) submitted normally by medical providers who accepted an Emblem health insurance plan.

27.    At all relevant times, Plaintiffs have been responsible for processing and keeping track of several dozen appeals and grievances at one time.  Plaintiffs are assigned several new appeals and grievances to process each day.

28.    Plaintiffs do not decide and have never decided whether an appeal or grievance should be denied or granted, nor have they ever made any recommendation or proposal as to what determination ought to be made.

29.    Rather, Plaintiffs merely collect information and records concerning appeals or grievances which have been submitted and pass them along to the ultimate decisionmakers — usually medical coordinators/directors, nurses, or physicians — who exclusively determine whether Emblem should grant or deny the appeal or grievance in question.

30.    Said differently, it is the ultimate decisionmakers — and not Plaintiffs — who are responsible for reviewing records and information pertaining to an appeal or grievance and for then determining whether a particular medical procedure or treatment was medically necessary such that it should be covered under an Emblem health insurance plan.

31.     Once a decision on an appeal or grievance is reached, it is communicated to Plaintiffs.  Plaintiffs then memorialize the decision in determination letters which are drafted pursuant to templates.  Plaintiffs then send the determination letter to the party who submitted the appeal or grievance.

32.     Plaintiffs are required to follow and not deviate from well-established guidelines and directives to perform their jobs.  For instance, through training and on-the-job experience, Plaintiffs and similarly situated persons are expected to be able to recognize the type/category of appeal or grievance that is being submitted, which will guide to whom the appeal or grievance will to be sent for an ultimate determination, as well as what records and information are needed to inform the decision.

33.     By way of example only, a particular hospital may require that a specific procedure and time frame be adhered to when an appeal or grievance is submitted related to a procedure or treatment performed at that hospital.  If this is the case, Plaintiffs are required to strictly follow these set procedures and timelines and not deviate from them.

34.     Plaintiffs and similarly situated persons are also trained and required to follow well-established guidelines that set forth what types of medical records and other information is necessary in order for an ultimate decisionmaker to rule on an appeal or grievance.  Like most of their responsibilities, as Plaintiffs gained more experience in their roles, they learned to more quickly and efficiently identify whether there are gaps in the records and/or information submitted in connection with an appeal or grievance.

35.     To that end, if certain required information or records are missing or incomplete, Plaintiffs are responsible for notifying the party submitting the appeal or grievance of this deficiency so that they have an opportunity to amend or supplement their submission.  It is

ultimately up to the party submitting the appeal or grievance to determine whether to amend or supplement their submission.

36.     A key part of Plaintiffs' duties and responsibilities are to be aware of and stay on top of any already-established deadlines governing when a particular appeal or grievance must be resolved and closed out.  For instance, some hospitals establish deadlines by which any appeal or grievance related to procedures performed in those hospitals had to be resolved, or otherwise the appeal would be presumed to be granted.

37.     While Plaintiffs were responsible for communicating these deadlines to the relevant parties and decisionmakers as the deadlines neared, Plaintiffs' have no control whether deadlines are in fact met.

38.     While it was certainly imperative that Plaintiffs and other similarly situated person be highly detail-oriented, organized, and meticulous to excel at their jobs, Plaintiffs did not make any decisions that had any significance to Emblem.  Nor did Plaintiffs have any ability or authority to bind Emblem to any decisions or determinations of significance.  Plaintiffs did not make judgements on the propriety or merit of any appeal or grievance, nor would they ever propose resolutions.

39.     Plaintiffs essentially acted as messengers, tasked with gathering and facilitating the exchange of necessary information between a party challenging a decision made by Emblem whether to pay an insurance claim and a final decisionmaker who ruled on whether the decision was appropriate, all pursuant to pre-established processes and guidelines from which Plaintiffs could not deviate.

40.     Furthermore, Plaintiffs had no ability to control their workload.  Plaintiffs could not refuse or defer assignments but had to process and work towards closing out all appeals and grievances assigned to them by their managers.

41.     While Plaintiffs could theoretically prioritize working on certain appeals and grievances over others, Plaintiffs ultimately were beholden to and could not deviate from the strict, often extremely short, pre-established deadlines and time frames by which to close out particular appeals and grievances.  Plaintiffs had no authority to adjust or push back these deadlines and faced punishment and reprimanding if deadlines were missed.

42.     While Plaintiffs could theoretically choose to complete some of their work outside normal business hours or on weekends, they had no control over the *quantity* of or hours needed to complete their assigned work, nor over the deadlines by which appeals and grievances needed to be resolved.

43.     In fact, Plaintiffs were routinely told by their managers in the middle of a workday that they had to complete the processing of dozens of outstanding cases by close of business that day.  These types of sudden, often completely unreasonable demands left Plaintiffs with no choice, lest they lose their jobs, but to work well into most evenings and on most weekends, and certainly well over 40 hours a week.

44.     Moreover, Emblem closely monitored the work that Plaintiffs and similarly situated persons performed, requiring them to be in contact with their managers throughout the workday and to report and keep detailed notes and records on the appeals and grievances they processed.  Plaintiffs were required to bring any questions they had about how to process an appeal or grievance to their managers and would be reprimanded if they did not do so.

45.     Plaintiffs had no authority to delegate or decline work assigned to them.  In fact, Plaintiffs would routinely be assigned new work by their managers close to or even on the eve of when they were about to go on vacation, even though their managers knew about the vacation. This resulted in Plaintiffs having to work during many vacations lest they be disciplined for failing to meet deadlines for processing appeals and grievances.

46.     Even when Plaintiffs were able to avoid having to work while on vacation, Plaintiffs would nonetheless return to work to discovery that they had been assigned new appeals and grievances to process while they were away, requiring them to work even more hours than normal just to catch up.

47.     Plaintiffs were expected to be available to return phone calls and emails outside of normal business hours, including on weekends.  In fact, Plaintiffs were routinely contacted by their managers outside of normal business hours.

48.     Plaintiffs would also submit reports, send emails, and sign off from work well past normal business hours.

49.     Accordingly, Emblem knew that Plaintiffs and other similarly situated persons had to work extremely long hours — well over 40 each week — to complete their assigned work but were not paid overtime wages.

50.     During all relevant times, there has been no material change in the job duties and assignment of Plaintiffs.

51.     Plaintiffs did not regularly or customarily direct two or more persons (or any persons for that matter), and they had no management responsibilities.  They were only responsible for their own work while employed at Emblem.

52.     While new or less experienced Grievance and Appeal Specialists would at times shadow Plaintiffs while they worked, Plaintiffs were not responsible for training nor evaluating the performance of any employees.  Plaintiffs had no ability to make or even recommend hiring, firing, discipline, compensation-related, or any meaningful personnel decisions.

53.     As set forth above, Plaintiffs' primary duties did not require knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized academic instruction or study.

54.     As described above, Plaintiffs' primary duties did not involve work that required invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor.

55.     Plaintiffs' primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance.

56.     Plaintiffs were not regularly or customarily engaged away from Emblem's place or places of business in performing their primary duties but worked primarily in Emblem's offices or from their home offices.

57.     Plaintiffs were not required to record their time spent working.  Thus, Emblem failed to maintain records concerning Plaintiffs' hours works as required by the FLSA and NYLL.

58.     Emblem failed to furnish Plaintiffs with paystubs that recorded their actual hours worked and rates of regular hourly and overtime pay.

59.     Emblem also failed to issue Plaintiffs wage notices that informed them of their regular hourly and overtime pay rates.

60.     Based on the foregoing, as part of its regular business practices, Emblem has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating

the FLSA and the NYLL with respect to Plaintiffs and similarly situated persons.  This policy, pattern and/or practice includes, but is not limited to:

   a. willfully failing to record all of the time that Plaintiffs and similarly situated persons worked for the benefit of Emblem;

   b. willfully failing to keep payroll records as required by the FLSA and NYLL;

   c. willfully misclassifying Plaintiffs and similarly situated persons as exempt from the overtime requirements of the FLSA and NYLL; and

   d. willfully failing to pay Plaintiffs and similarly situated persons overtime wages for hours that they worked in excess of 40 hours per week.

61. Upon information and belief, Emblem's unlawful conduct described herein is pursuant to corporate policies or practices of minimizing labor costs by violating the FLSA and the NYLL.

62. Emblem is aware or should have been aware that state and federal law required it to pay employees performing non-exempt duties an overtime premium for hours worked in excess of 40 per week.

63. Emblem's failure to pay Plaintiffs and similarly situated persons overtime wages for their work in excess of 40 hours per week was willful.

64. Emblem's unlawful conduct has been widespread, repeated, and consistent.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

65. Plaintiffs brings their FLSA claims as a collective action on behalf of themselves and on behalf of all other similarly situated persons who were employed by Emblem as a "Grievance and Appeal Specialist," "Senior Grievance and Appeal Specialist," and/or any

similar positions and were not paid overtime compensation for all hours worked in excess of 40 in a week during the FLSA Collective Period.

66.     At all relevant times, Plaintiffs and the other members of the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, plans and practices, and were subject to Emblem's failure to pay them overtime wages for hours worked over 40 in a week.

67.     During the FLSA Collective Period, Emblem was fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties were not exempt from the overtime provisions of the FLSA.

68.     As a result of Emblem's conduct as alleged herein, Emblem violated 29 U.S.C. § 207 by not paying Plaintiffs and the FLSA Collective overtime wages for hours worked over 40 in a week.

69.     As a result of Emblem's conduct, Emblem is liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid overtime wages, plus an additional equal amount in liquidated damages, interest, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

70.     While the exact number of the FLSA Collective is unknown to Plaintiffs at the present time, upon information and belief, there are more than 100 other similarly situated persons who were employed by Emblem as a "Grievance and Appeal Specialist," "Senior Grievance and Appeal Specialist," and/or any similar positions and were not paid overtime compensation for all hours worked in excess of 40 in a week during the FLSA Collective Period.

## RULE 23 CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring their NYLL claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and on behalf of all other similarly situated persons who were employed by Emblem as a "Grievance and Appeal Specialist," "Senior Grievance and Appeal Specialist," and/or other similar position and who worked in New York and/or had New York state income taxes withheld from their paychecks while working remotely outside of New York and who were not paid overtime compensation for all hours worked in excess of 40 in a week during the NYLL Class Period.

72.     Plaintiffs allege that they and other NYLL Class Members were/are: (i) not paid overtime wages for all hours worked over 40 hours in a week; (ii) not provided with accurate wage notices; and (iii) not furnished with accurate wage statements/paystubs.

73.     The basic job duties of the NYLL Class were the same as or substantially like those of Plaintiffs, and the NYLL Class were paid in the same manner and under the same common policies, plans and practices as Plaintiffs.

74.     Emblem subjected both the NYLL Class and Plaintiffs to the same unlawful policies, plans and practices, including not paying them overtime wages for hours worked over 40 in a week and not furnishing accurate wage notices or wage statements.

75.     During the NYLL Class Period, Emblem was fully aware of the duties performed by Plaintiffs and the NYLL Class, and that those duties were not exempt from the applicable provisions of the NYLL and/or its regulations.

76.     As a result of Emblem's conduct as alleged herein, Emblem violated the NYLL and/or its regulations by not paying Plaintiffs and the NYLL Class overtime wages for hours worked over 40 in a week and not furnishing accurate wage notices and wage statements.

77.     As a result of Emblem's conduct, Emblem is liable to Plaintiffs and the NYLL

Class for the full amount of their unpaid overtime wages, penalties for failing to issue accurate

wage notices of up to $5,000 per person, and penalties for failing to furnish accurate wage

notices of up to $5,000 per person, plus additional amounts (where applicable) in liquidated

damages, interest, plus the attorneys' fees and costs incurred by Plaintiffs and the NYLL Class.

78.     Certification of the NYLL Class's claims as a class action is the most efficient

and economical means of resolving the questions of law and fact common to Plaintiffs' claims

and the claims of the NYLL Class.  Plaintiffs have standing to seek such relief because of the

adverse effects that Emblem's unlawful compensation policies and practices have had on them

individually and on members of the NYLL Class.  Without class certification, the same evidence

and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant

risk of inconsistent adjudications and conflicting obligations.  Certification of the NYLL Class is

the most efficient and judicious means of presenting the evidence and arguments necessary to

resolve such questions for Plaintiffs, the NYLL Class, and Emblem.

79.     Plaintiffs' claims raise questions of law and fact common to the NYLL Class.

Among these questions are:

- •     Whether Emblem employed Plaintiffs and the NYLL Class Members within the meaning of the NYLL;

- •     Whether Emblem improperly classified Plaintiffs and the NYLL Class Members as exempt employees under the NYLL;

- •     Whether Emblem paid Plaintiffs and the NYLL Class Members overtime wages for all hours worked over 40 in a workweek;

- •     Whether Emblem's failure to pay overtime wages constitute violations of the FLSA or NYLL;

- At what common rate, or rates subject to common methods of calculation, was Emblem required to pay Plaintiffs and the NYLL Class Members for their work;

- Whether Emblem failed to maintain accurate records of the hours worked by Plaintiffs and the NYLL Class Members as required by the NYLL;

- Whether Emblem failed to issue Plaintiffs and the NYLL Class accurate wage notices in violation of the NYLL;

- Whether Emblem failed to furnish Plaintiffs and the NYLL Class with accurate wage statements in violation of the NYLL; and

- Whether Emblem's violations of the FLSA and NYLL and/or their regulations were willful.

80.     These common questions of law and fact arise from the same course of events, and each NYLL Class Member will make similar legal and factual arguments to prove liability.

81.     Plaintiffs are members of the NYLL Class that they seek to represent.  Plaintiffs' claims are typical of the claims of the NYLL Class.  The relief Plaintiffs seek for the unlawful policies and practices complained of herein are also typical of the relief which is sought on behalf of the NYLL Class.

82.     Plaintiffs' interests are co-extensive with those of the NYLL Class that they seek to represent in this case.  Plaintiffs are willing and able to represent the NYLL Class fairly and to vigorously pursue their similar individual claims in this action.  Plaintiffs have retained counsel who are qualified and experienced in labor and employment class action litigation, and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.  The combined interests, experience and resources of Plaintiffs and their counsel to litigate the individual and NYLL Class claims at issue in this case satisfy the adequacy of the representation requirement of Fed. R. Civ. P. 23(a)(4).

83.     Emblem has acted or refused to act on grounds generally applicable to the NYLL Class, making final injunctive and declaratory relief appropriate with respect to the NYLL Class.

84.     Injunctive and declaratory relief are the predominant relief sought in this case because they are the culmination of the proof of Emblem's individual and class-wide liability and the essential predicate for Plaintiffs' and the NYLL Class's entitlement to monetary and non-monetary remedies to be determined at a later stage of the proceedings.

85.     The common issues of law and fact affecting Plaintiffs' claims and those of the NYLL Class Members, including the common issues identified above, predominate over any issues affecting only individual claims.

86.     A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the NYLL Class.  There will be no difficulty in the management of this action as a class action.

87.     The cost of proving Emblem's violations of the NYLL and the supporting regulations make it impracticable for Plaintiffs and the NYLL Class to pursue their claims individually.  Maintenance of a class action promotes judicial economy by consolidating a large class of plaintiffs litigating identical claims.  The claims of the NYLL Class interrelate such that the interests of the members will be fairly and adequately protected in their absence. Additionally, the questions of law and fact common to the NYLL Class arise from the same course of events and each Class Member makes similar legal and factual arguments to prove Emblem's liability.

88.     The NYLL Class is so numerous that joinder of all members is impracticable. While the exact number of the NYLL Class is unknown to Plaintiffs at the present time, upon information and belief, there are more than 100 similarly situated persons who were/are

employed by Emblem as a "Grievance and Appeal Specialist," "Senior Grievance and Appeal Specialist," and/or other similar position and who worked in New York and/or had New York state income taxes withheld from their paychecks while working remotely outside of New York and who were not paid overtime compensation for all hours worked in excess of 40 in a week during the NYLL Class Period.

<u>**FIRST CLAIM FOR RELIEF**</u>
**(Failure to Pay Overtime Wages in Violation of the FLSA)**

89.     Plaintiffs, on behalf of themselves and the FLSA Collective, reallege and incorporate by reference all preceding paragraphs relevant to their overtime wage violation claims as if they were set forth again herein.

90.     The FLSA requires covered employers, such as Emblem, to pay all non- exempt employees overtime wages of one and one-half times their regular hourly wages for hours worked over 40 in a week.  Plaintiffs and the FLSA Collective were not exempt from the requirement that Emblem pay them overtime wages under the FLSA.

91.     During the FLSA Collective Period, Emblem did not pay Plaintiffs and the FLSA Collective overtime wages for all hours worked over 40 in a week for Emblem

92.     As a result of Emblem's failure to pay Plaintiffs and the FLSA Collective overtime wages for all hours worked over 40 in a workweek, Emblem violated the FLSA.

93.     The foregoing conduct of Emblem constitutes willful violations of the FLSA.

94.     Emblem's violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid overtime wages, an additional equal amount in liquidated damages, interest, and attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**(Failure to Pay Overtime Wages in Violation of the NYLL)**

95.     Plaintiffs, on behalf of themselves and the NYLL Class, reallege and incorporate by reference all preceding paragraphs relevant to their overtime wage violation claims as if they were set forth again herein.

96.     The NYLL requires covered employers, such as Emblem, to pay all non- exempt employees overtime wages of one and one-half times their regular hourly wages for hours worked over 40 in a week.  Plaintiffs and the NYLL Class were not exempt from the requirement that Emblem pay them overtime wages under the NYLL.

97.     During the NYLL Class Period, Emblem did not pay Plaintiffs and the NYLL Class overtime wages for all hours worked over 40 in a week for Emblem.

98.     As a result of Emblem's failure to pay Plaintiffs and the NYLL Class overtime wages for all hours worked over 40 in a workweek, Emblem violated the NYLL.

99.     The foregoing conduct of Emblem constitutes willful violations of the NYLL.

100.     Emblem's violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid overtime wages, an additional equal amount in liquidated damages, interest, and attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**(Failure to Issue Accurate Wage Notices)**

101.     Plaintiffs, on behalf of themselves and the NYLL Class, reallege and incorporate by reference all preceding paragraphs relevant to their claim for failure to issue accurate wage notices as if they were set forth again herein.

102.     NYLL §§ 195(1) and (2) require employers to issue accurate wage notices to employees at the time of their hiring or when any changes to the information required to appear on wage notices occurs.

103.     During the NYLL Period, Emblem unlawfully failed to issue accurate wage notices to Plaintiffs and the NYLL Class by, *inter alia*, failing to notify Plaintiffs and the NYLL Class of their accurate rate of pay, including overtime pay.

104.     Due to Emblem's NYLL violations, Plaintiffs and the NYLL Class Members are each entitled to $50 per day for every day accurate wage notices were not provided, up to $5,000 per person, plus interest and attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
### (Failure to Furnish Accurate Wage Statements/Pay Stubs)

105.     Plaintiffs, on behalf of themselves and the NYLL Class, reallege and incorporate by reference all preceding paragraphs relevant to their claim for failure to furnish accurate wage statements as if they were set forth again herein.

106.     NYLL § 195(3) requires employers to furnish employees with accurate wage statements, *i.e.*, pay stubs, that include accurate, *inter alia*, rate or rates of pay and basis thereof, and hours worked.

107.     During the NYLL Period, Emblem unlawfully failed to issue accurate wage statements to Plaintiffs and the NYLL Class.

108.     Due to Emblem's NYLL violations, Plaintiffs and the NYLL Class Members are each entitled to $250 per violation up to $5,000 per person, plus interest and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective and the NYLL Class, respectfully request that the Court:

A.      Declare that the practices complained of herein are unlawful under applicable federal and state law;

B.      Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Emblem to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers and e-mail addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

C.      Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Emblem's violations of the FLSA, and award those damages against Defendants, jointly and severally, and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

D.      Award Plaintiffs and the FLSA Collective an additional equal amount as liquidated damages because Emblem's violations were willful and/or without a good faith basis;

E.      Declare this action to be maintainable as a class action pursuant to Fed. R. Civ. P. 23, and direct Emblem to provide Plaintiffs with a list of all members of the NYLL Class, including all last known addresses, telephone numbers and e-mail addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

F.      Designate Plaintiffs as representative of the NYLL Class, and their counsel of record as class counsel;

G.      Determine the damages sustained by Plaintiffs and the NYLL Class as a result of

Emblem's violations of the NYLL and/or its regulations, and award those damages against

Defendants, jointly and severally, and in favor of Plaintiffs and the NYLL Class, plus such pre-

judgment and post- judgment interest as may be allowed by law;

H.      Award Plaintiffs and the NYLL Class an additional amount as liquidated damages

pursuant to the NYLL because Emblem's violations were willful and/or without a good faith

basis;

I.      Award Plaintiffs, the FLSA Collective and the NYLL Class their reasonable

attorneys' fees and costs and disbursements in this action including, but not limited to, any

accountants' or experts' fees; and

J.      Grant Plaintiffs, the FLSA Collective and the NYLL Class such other and further

relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and on behalf of all other similarly situated persons,

hereby demand a trial by jury on all issues of fact and damages.

Dated:  April 8, 2022
        New York, New York

                                        Respectfully submitted,

                                        **RAHMAN LAW P.C.**

                                        By: _____
                                            Tanvir H. Rahman

                                        477 Madison Avenue, 6th Floor
                                        New York, New York 10022
                                        T: 212.920.4096 | F. 347.467.4142
                                        thr@rahmanlawyer.com

                                        *Counsel for Plaintiffs, the FLSA Collective,*
                                        *and the NYLL Class*