

Tanvir Rahman
TRahman@filippatoslaw.com
914-984-1111, Ext. 505

199 Main Street, Suite 800
White Plains, NY 10601
filippatoslaw.com

**F I L I P P A T O S   P L L C**
Employment Law, Litigation & ADR

June 13, 2025

**VIA ECF**

The Honorable Jennifer H. Rearden
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

> **Re:**   *Cordova, et al. v. EmblemHealth, et al.*, No. 22 Civ. Civ. 2933 (JHR)(CWG)

Dear Judge Rearden,

The parties respectfully enclose herein their revised joint motion for preliminary approval of the class action settlement (the "Revised Motion") with supporting documents.  For Your Honor's ease of reference, the parties wish to identify the specific portions of the Revised Motion, revised class action notice (the "Notice") (*see* Exhibit 4 to Declaration of Tanvir Rahman ("Rahman Decl.")), and revised settlement agreement (the "Agreement") (Rahman Decl. at Ex. 3) that have been added and/or materially revised in light of the Court's comments and guidance at the May 30, 2025, telephone conference.

**The Revised Motion**

1.  Section II(C), p. 6-7, has been revised to add a sentence at the end of the section that clarifies that all executed and timely submitted Claim Forms and Releases will be filed with the Court and function as an "opt in" form with respect to Class Members' FLSA claims.

2.  Section III(C), pp. 12-23, has been revised to specifically articulate the standards of review for the fairness, reasonableness, and adequacy of FLSA settlements as set forth in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and *Wolinsky v. Scholastic, Inc.,* 900 F. Supp. 2d 32 (S.D.N.Y. 2012).

3.  Section III(C)(1), p. 13-15, has been revised to clarify why the parties believe that the Settlement satisfies the second *Wolinsky* factor (i.e., that the Settlement enables the parties to avoid anticipated burdens and expenses in establishing their claims and defenses).

4.  Section III(C)(3), pp. 16-18, has been revised to clarify why the parties believe that the Settlement satisfies the fourth and fifth *Wolinsky* factors (i.e., that the Settlement is the product of arm's length bargaining between experienced counsel and that there is an absence of any possible fraud or collusion, respectively).

5.  Section III(C)(4), pp. 18-19, has been revised to clarify why the parties believe that the Settlement satisfies the third *Wolinsky* factor (i.e., that there are serious litigation risks faced by the parties that support settlement).

6. Section III(C)(5), pp. 19-20, has been revised to clarify further why the parties believe that the Settlement satisfies the second and third *Wolinsky* factors.

7. Section III(C)(7), pp. 20-22, has been revised to clarify why the parties believe that the Settlement satisfies the first *Wolinsky* factor (i.e., that the settlement is within the range of the plaintiffs' potential recovery).

8. Section III(C)(8), pp. 22, has been added to address why the *Wolinsky* counter-factors 1, 2, and 3 (i.e., the presence of other employees situated similarly to the claimant, the likelihood that the claimant's circumstances will recur, and whether the employer has a history of FLSA non-compliance, respectively) do not weigh against approval of the Settlement.

9. Section III(C)(9), pp. 23, has been added to address why *Wolinsky* counter-factor 4 (i.e., the desirability of a mature record and pointed determination of the governing factual or legal issue to further develop the law in general or in an industry or workplace) also does not weigh against approval of the Settlement.

10. Section IV, pp. 23-28, has been revised to provide factual and legal support for Plaintiffs' counsel's requested attorneys' fees and reimbursement of litigation costs, including references to billing and expense records (*see* Rahman Decl. at Exs. 8 and 9).

## **The Notice**

1. The "Attend the Hearing" section of the "Your Options" table on p. 2 has been revised to include a reference to paragraph 16 of the Notice and to provide further information concerning the date, time, and location of the Fairness Hearing.

2. Paragraph 1, "What is a class action?", on p. 2, has been revised to define the term "Named Plaintiffs."

3. Paragraph 2, "Why did I get this Notice?", on p. 2, has been revised to define the term "Settlement Class."

4. Paragraph 3, "What is the lawsuit about?", on p. 3, has been revised to identify the mediator whom the parties retained and the date on which a settlement was reached.

5. Paragraph 4, "Why is there a settlement?", on p. 3, has been revised to state that the parties' settlement negotiations were done under the supervision of the mediator.

6. Paragraph 5, "What does the settlement provide and when will I receive it?", on p. 4, has been revised to add a sentence concerning when the settlement payment should be received (i.e., within approximately 90 days of Final Approval).

7. Paragraph 6, "How can I receive a portion of the settlement monies?", on page 4, has been revised to add a sentence stating that timely submitted claim forms will be filed with the Court.

8. Paragraph 7, "If I remain in the Settlement Class, what am I "releasing" or giving up?", on p. 4, has been revised to bold the sentence: "Unless you exclude yourself, you are "releasing" those claims under state and local law regardless of whether you submit a Claim Form." This paragraph has been further revised to specifically state that a putative class member will not be releasing their FLSA claims if they do not submit a claim form.

9. Paragraph 11, "How can I object to the settlement?", on p. 5, has been revised to include a sentence stating that any objections to the settlement will be filed with the Court.

**The Agreement**

1. The definition of "FLSA Class" on p. 1, paragraph 1(c), has been revised to omit that a Class Member will become a member of the FLSA Class – and therefore release their FLSA claims – by virtue of cashing or depositing a settlement payment, and clarifies that a Class Member will become a member of the FLSA Class by timely submitting a claim form and release filed with the Court.

2. Paragraph 3(B) on pp. 3-4 has been revised to add a sentence clarifying that timely executed claim forms will be filed with the Court.

We thank the Court for Your Honor's time and consideration of this matter.

Respectfully submitted,

Tanvir H. Rahman
Encl.

cc:     All Counsel of Record (*via* ECF)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DASYA MARÍA CORDOVA and ADA CASASUS, on
behalf of themselves and a class and collective of
similarly situated persons,

       Plaintiff,

  – against –

EMBLEMHEALTH INC. and EMBLEMHEALTH
SERVICES COMPANY, LLC,

       Defendants.

Case No. 22-CV-2933 (JHR)

---

## REVISED JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

**FILIPPATOS PLLC**

By: _____
Tanvir H. Rahman
Parisis G. Filippatos
199 Main Street, Suite 800
White Plains. New York 10601
T.F/: 914.984.1111
trahman@filippatoslaw.com
pgf@filippatoslaw.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.    Background ..................................................................................................................1

    A.  Allegations of the Complaint ............................................................................1

    B.  Procedural History .............................................................................................2

II.   SUMMARY OF THE SUBMITTED PROPOSED SETTLEMENT ......................5

    A.  Settlement Consideration ...................................................................................5

    B.  Settlement Allocation Formula ..........................................................................5

    C.  Settlement Claims Administrator and Notice to Class Members ......................6

    D.  Timing of Settlement Payments ........................................................................7

    E.  Eligible Employees ............................................................................................7

    F.  Release of Claims ..............................................................................................8

    G.  Attorneys' Fees and Litigation Costs ................................................................8

    H.  Service Awards ..................................................................................................8

III.  CLASS AND COLLECTIVE ACTION SETTLEMENT IS APPROPRIATE .......9

    A.  Procedure for Class and Collective Action Settlement .....................................9

    B.  Preliminary Approval of the Settlement Is Appropriate ..................................10

    C.  The Settlement Is Fair, Reasonable and Adequate and Meets All Requirements for FLSA Settlement Approval ..........................................................................................12

        1.  Litigation Through Trial Would Be Complex, Costly and Long *(Grinnell Factor 1 and Wolinsky Factor 2)* ............................................................................................13

        2.  The Reaction to the Settlement Has Been Positive *(Grinnell Factor 2)* .................15

        3.  Sufficient Discovery Has Taken Place to Allow the Parties to Resolve the Case Responsibly Following Arms Length Bargaining Between Experienced Counsel Absent Any Fraud or Collusion *(Grinnell Factor 3 and Wolinsky Factors 4 and 5)* ............................16

        4.  Plaintiffs Would Face Serious and Real Risks at Trial *(Grinnell Factors 4 and 5 and Wolinsky Factor 3)* ...........................................................................................................18

        5.  Maintaining the Class Through Trial Would Not Be Simple *(Grinnell Factor 6*

i

*and Wolinsky Factors 2 and 3)* ................................................................................................19

      6.  EmblemHealth's Ability to Withstand a Greater Judgment Is Not a Bar to the Settlement *(Grinnell Factor 7)* ................................................................................................20

      7.  The Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation *(Grinnell Factors 8 and 9 and Wolinsky Factor 1)* ...........................20

      8.  Presense of Other Employees Situated Similarly to Plaintiff, the Likelihood that Plaintiffs' Circumstance Will Recur, and a History of FLSA Non-Compliance By Defendants (*Wolinsky* Counter-Factors 1, 2, and 3).....................................................................................22

      9.  Desirability of a Mature Record and the Development of the Law (*Wolinsky* Counter-Factor 4) ...........................................................................................................................23

IV.   PROVISIONAL CERTIFICATION IS APPROPRIATE ....................................................23

    A.  Numerosity ........................................................................................................................24

    B.  Commonality .....................................................................................................................25

    C.  Typicality...........................................................................................................................25

    D.  Adequacy of the Named Plaintiffs ...................................................................................26

    E.  Certification Is Proper Under Rule 23(b)(3)......................................................................26

      1.  Common Questions Predominate.............................................................................27

      2.  A Class Action Is a Superior Mechanism ...............................................................28

V.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL AND THEIR REQUESTED FEES AND COSTS SHOULD BE PROVISIONALLY APPROVED........28

VI.  THE PROPOSED NOTICE AND AWARD DISTRIBUTION ARE FAIR ......................31

CONCLUSION .......................................................................................................................32

# TABLE OF AUTHORITIES

**CASES**

*Aboud v. Charles Schwab & Co.*,
    2014 No. 14 Civ. 2712 (PAC), 2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014) .................... 30

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ..........................................................................................24, 27

*Aponte v. Comprehensive Health Mgmt. Inc.*,
    2011 No. 10 Civ. 4825, 2011 WL 2207586 (S.D.N.Y. June 2, 2011) ................................ 25

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013).............................................................................. 30

*Cagan v. Anchor Sav. Bank FSB*,
    1990 No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)................................ 21

*Calderon v. GEICO*,
    908 F.3d 111 (4th Cir. 2015).................................................................................. 23

*CBF Industria DE Gusa S/A v. AMCI Holdings, Inc.*,
    342 F.R.D. 84 (S.D.N.Y. 2022)............................................................................... 30

*Cheeks v. Freeport Pancake House, Inc.*,
    796 F.3d 199 (2d Cir. 2015) .................................................................................. 12

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .................................................................................. 12

*Clark v. Centene*,
    656 Fed. Appx. 688 (5th Cir. 2016) ......................................................................... 23

*Clark v. Ecolab, Inc.*,
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ............................................................ 11

*Clem v. Keybank, N.A.*,
    2014 No. 13 Civ. 789 (JCF), 2014 WL 2895918 (S.D.N.Y. June 20, 2014) ...................... 30

*Cordes & Co. Min. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)..................................................................................... 27

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................. 11, 17, 20, 22, 25

*Gen. Tel. Co. SW v. Falcon*,
    457 U.S. 147 (1982) ............................................................................................ 25

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ................................................................................29

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) ..............................................................................28

*Guthrie v. Rainbow Fencing Inc.*,
    113 F.4th 300 (2d Cir. 2024)..............................................................................21

*Hernandez v. Merrill Lynch & Co.*,
    No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013).......................30

*Hinely v. Am. Family Mut. Ins. Co.*,
    275 F.Supp.3d 1229 (D. Colo. 2016) ................................................................23

*In re Austrian & German Bank Holocaust Litig.*,
    80 F.Supp.2d 164 (S.D.N.Y. 2000)..............................................................13, 16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 No. 05 Civ. 10240, 2007 WL 2230177 (2007) ..........................................12

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004).................................................................29, 31

*In re Nissan Radiator/Transmission Cooler Litig.*,
    2013 No. 10 Civ. 7493 (VB), 2013 WL 4080946 (S.D.N.Y May 30, 2013).......30

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997).......................................................................18

*In re Telik, Inc. Sec. Litig.*,
    576 F.Supp.2d 570 (S.D.N.Y. 2008) ................................................................30

*In re Traffic Exec. Ass'n.*,
    627 F.2d 631 (2d Cir. 1980) ..............................................................................11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004).........................................................................10, 16

*Khait v. Whirlpool Corporation*,
    2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)....................................................28

*Kimean v. Local 363, Int'l Bhd. of Teamsters*,
    109 F.R.D. 391 (S.D.N.Y. 1986).......................................................................25

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) ..............................................................................30

*Marriott v. Cnty. of Montgomery*,
    227 F.R.D. 159 (N.D.N.Y. 2005) ....................................................................... 27

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998) ............................................................................... 11

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ....................................................................... 27

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) ....................................................................... 27

*Novella v. Westchester County*,
    443 F.Supp.2d 540 (S.D.N.Y. 2006) ................................................................. 24

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................. 21

*Port Auth. Police Benevolent Ass'n, v. Port Auth. of N.Y. & N.J.*,
    698 F.2d 150 (2d Cir. 1983) .............................................................................. 25

*Raniere v. Citigroup Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015) ....................................................................... 30

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................ 24

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) .............................................................................. 26

*Taft v. Ackermans*,
    2007 No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...................... 31

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
    2004 No. 01 Civ. 11814, 2004 WL 2997957 (S.D.N.Y. May 14, 2004) ........................... 21

*Torres v. Gristede's Corp.*,
    2006 No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) .......................... 27

*Toure v. Cent. Parking Sys.*,
    2007 No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .......................... 26

*Varljen v. H.J. Meyers & Co., Inc.*,
    2000 No. 97 Civ. 6742 (DLC), 2000 WL 1683656 (2000) ................................................ 29

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................................................... 10, 10

*Wolinsky v. Scholastic Inc.*,
    900 F.Supp.2d 332 (S.D.N.Y. 2012) ............................................................... 12, 12

**FEDERAL RULES**

Fed. R. Civ. P. 23(e) ............................................................................................... 10

Fed. R. Civ. P. 23(a) ............................................................................................... 24

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 26

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 24

Fed. R. Civ. P. 23(g)(1)(A) ...................................................................................... 29

Fed. R. Civ. P. 23(g)(1)(B) ...................................................................................... 29

Fed. R. Civ. P. 23 .......................................................................................... *Passim*

Plaintiffs Dasya Cordova and Ada Casasus (the "Named Plaintiffs"), on behalf of themselves, and the proposed Rule 23 Class (defined on pages 7 and 22 for settlement purposes only) (Named Plaintiffs and the Rule 23 Class referred to as "Plaintiffs" or "Class Members"), with Defendants EmblemHealth Inc. and EmblemHealth Services Company, LLC (together, "Defendants" or "EmblemHealth") (altogether the "Parties") jointly move for preliminary approval of the proposed Joint Class and Collective Action Settlement Agreement (the "Agreement"), settling the class and collective claims alleged in the Complaint after successful mediation with an experienced wage and hour mediator (the "Settlement"). The Parties, together with Filippatos PLLC as proposed class counsel ("Class Counsel"), respectfully request that the Court enter the Proposed Order Granting Preliminary Approval of Class and Collective Action Settlement (the "Proposed Order"). *See* Declaration of Tanvir H. Rahman ("Rahman Decl."), Ex. 1 (Proposed Order).

## I.   Background

### A.   Allegations of the Complaint

The Named Plaintiffs and Class Members they seek to represent were and/or are employed by EmblemHealth as "Grievance and Appeals Specialists" and "Senior Grievance and Appeals Specialists" (together, "G&A Specialists") during applicable time periods for the Rule 23 Class. *See* Rahman Decl., Ex. 2 (Complaint). The Named Plaintiffs allege that G&A Specialists investigate and process appeals and grievances related to health insurance claim determinations (*i.e.*, if a claim is denied in whole or in part) submitted by medical providers who accept an EmblemHealth insurance plan. Their duties include:

- Processing and keeping track of several dozen appeals and grievances at one time;

- Collecting information and records concerning appeals or grievances and passing them along to decisionmakers — usually medical coordinators/directors, nurses, or physicians;

- Memorializing the decision in determination letters drafted pursuant to templates; and

- If required information or records are missing or incomplete, notifying the grievant so they can amend or supplement their submission.

Ex. 2 at ¶26-27, 29, 31.  Plaintiffs allege that they primarily gathered and facilitated the exchange of information between a party challenging a decision by EmblemHealth whether to pay an insurance claim and a final decisionmaker pursuant to pre-established processes and guidelines from which Plaintiffs could not deviate. *Id.* at ¶39.  Plaintiffs worked over 40 hours per week and were classified as exempt from overtime pursuant to the "Administrative" exemption. *Id.* at ¶24, 60(c).  Plaintiffs allege they were misclassified and denied overtime wages for hours worked over 40 in a workweek.  *Id.* at ¶1-2. EmblemHealth has denied the allegations in the Complaint and, specifically, that Plaintiffs were misclassified as "exempt" for purposes of federal and state law. EmblemHealth maintains that Plaintiffs were required to, and did, perform primary job duties that satisfied the applicable exemption requirements.

Plaintiffs also allege they were not provided accurate wage notices and paystubs. *Id.* at ¶72. EmblemHealth similarly has denied those allegations and has maintained that the company provided all notices required by law.

**B.**    **Procedural History**

On April 8, 2022, Named Plaintiffs commenced this action, alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") as a putative class and collective action. On April 21 and 22, 2022, six additional plaintiffs joined this case. Dkt. Nos. 9-14.  Defendants filed their Answer on June 6, 2022.  Dkt. No. 16.  In the ensuing months, the Parties negotiated conditional certification of an FLSA collective and Court-authorized notice. Plaintiffs submitted a proposed stipulation and order on August 22, 2022.  Dkt. No. 25.  On August

23, 2022, the Court issued the proposed conditional certification order. Dkt. No. 26. After collective action notice was sent to over 100 G&A Specialists employed from April 8, 2019, to the date of the notices (the "FLSA Collective Period"), 18 party plaintiffs opted into this case. Dkt. Nos. 29-39; 41-44; 51; 56; 60.

Then, over the next nearly two years, the Parties engaged in significant discovery. This included the exchange of thousands of pages of documents and spreadsheets, including internal policies, manuals, correspondence, and wage and time records. Rahman Decl. at ¶4. Defendants issued multiple rounds of requests for productions and interrogatories to the Named Plaintiffs and the 24 party plaintiffs who opted in. *Id.* at ¶10. Plaintiffs deposed six EmblemHealth executive and managerial-level employees. *Id.* at ¶5. Defendants deposed the two Named Plaintiffs and 23 party plaintiffs. *Id.* at ¶12. Following depositions, the parties requested additional documents and information from one another. *Id.* at ¶13.

Several discovery disputes arose between the Parties, all but one of which were resolved after meeting and conferring. *Id.* at ¶14. The Parties raised one discovery dispute related to the production of cell phone records (Dkt. Nos. 71 and 74), with the Court ultimately denying Defendants' motion to compel such records in an oral order issued on April 11, 2024.

Following fact discovery, the Parties anticipated substantial motion practice that would have continued this litigation well into 2025. Rahman Decl. at ¶16. Plaintiffs reserved their right to move for Rule 23 class certification until the close of fact discovery. *Id.* at ¶17. Defendants intended to oppose any such motion for Rule 23 class certification, move for decertification of the conditionally certified FLSA collective, and move for summary judgment on the basis that Plaintiffs were exempt from overtime pursuant to the "administrative" exemption. *Id.* at ¶18. Plaintiffs also intended to move for summary judgment on the basis that they were *not* exempt,

were entitled to liquidated damages as EmblemHealth's failure to pay overtime was not an act or omission made in good faith for which it had reasonable grounds to believe violated the FLSA, and that a three-year statute of limitations is applicable to their FLSA claims based on EmblemHealth's willful failure to abide by the FLSA. *Id.* at ¶19.

However, the Parties agreed that this was an opportune time to explore a global resolution before litigation costs and attorneys' fees escalated further (and prior to the aforementioned motions) and agreed to mediate with Stephen Sonnenberg, Esq. of JAMS, who is experienced in mediating wage and hour matters. *Id.* at ¶20.

In the lead up to the mediation, the Parties met and conferred several times to discuss their views on potential damages and data informative in determining damages. The Parties each submitted detailed mediation briefs and came to the mediation with an understanding of each side's perspective. *Id.* at ¶21. The Parties met for a full-day in-person mediation in New York City on May 30, 2024, attended by counsel, Named Plaintiff Dasya Cordova, and an executive from EmblemHealth. *Id.* at ¶24. While the Parties did not reach a resolution at this mediation session, progress was made. *Id.* at ¶25. The Parties agreed to regroup and consider issues raised during the initial mediation session and scheduled a second day of mediation for July 10, 2024. *Id.* at ¶26. While the Parties did not come to a global resolution at the full-day July 10, 2024, mediation session, in the following weeks, and while the Parties at the same time were preparing for motion practice on the anticipated class certification and FLSA collective decertification motions, the Parties reengaged in settlement discussions. *Id.* at ¶27. Ultimately, with the significant help of Mediator Sonnenberg, the Parties agreed to resolve this case on a full class basis for a total of **$3.795 million** on August 22, 2024. *Id.* at ¶28.

The Parties have since negotiated the terms of a full settlement agreement memorializing the terms of the Settlement which they will execute upon Court approval. *See* Rahman Decl., Ex. 3.

## II.    SUMMARY OF THE SUBMITTED PROPOSED SETTLEMENT

### A.    Settlement Consideration

EmblemHealth has agreed to pay a maximum amount of **$3,795,000** (the "Total Settlement Amount") to resolve this action on a class and collective basis. For purposes of settlement only, and as part of the Parties' agreement, the Parties have stipulated to a certified Rule 23 settlement class. The Total Settlement Amount will be the amount from which: (i) all Plaintiffs who participate in the settlement ("Qualified Claimants") shall receive their allocated share, (ii) Class Counsel will be compensated for their fees and reimbursed for expenses, (iii) the Named Plaintiffs and 23 opt in plaintiffs who participated in the discovery process will receive service payments ("Service Awards" or "Service Payments"), and (iv) the costs of administrating the settlement will be paid.

### B.    Settlement Allocation Formula

The portion of the Total Settlement Amount to be distributed to each Qualified Claimant will be determined using the following allocation formula: for each 7 days employed at any time in the G&A Specialist role from April 8, 2016, to the date of preliminary approval of the Settlement ("the Rule 23 Class Period"), assign 1 point. Each Rule 23 Class member's estimated individual settlement payment will be determined by dividing that Rule 23 Class member's total points by the total points of the entire Rule 23 Class, multiplied by the Net Settlement Fund (defined as the Total Settlement Amount minus requested Service Payments, settlement administration costs, and requested attorneys' fees and litigation costs). To the extent there are any Service Payments or

attorneys' fees and litigation costs not approved by the Court ("Unapproved Amounts"), such Unapproved Amounts shall be distributed to each Qualified Claimant on a pro rata basis determined by dividing each Qualified Claimant's total points by the total points of all Qualified Claimants multiplied by the Unapproved Amounts.  Ex. 3 at ¶4(E)(1).

### C.  Settlement Claims Administrator and Notice to Class Members

Rust Consulting, Inc. ("Rust") will serve as the settlement claims administrator. Rust is an experienced claims administrator that regularly serves to administer class wage and hour settlements like the instant case.  Rahman Decl. at ¶78.  Its requested fees in a sum not to exceed **$18,000** will be paid from the Total Settlement Amount. *Id.* at ¶79.  Within 14 days after entry of the Preliminary Approval Order, EmblemHealth's counsel will provide Rust with a spreadsheet listing the names, dates of employment during the Rule 23 Class Period, phone numbers, and last known mailing and e-mail addresses of the Rule 23 Class for purposes of mailing Notice Packets. *See* Rahman Decl., Ex. 4 (Proposed Notice); Ex. 5 (Proposed Claim Form and Release).

Within 10 days after receiving this spreadsheet, Rust will mail and email the Rule 23 Class Notice Packets with a postage-paid return envelope. Rule 23 Class members will have 45 days from mailing to: (i) submit a Claim Form and Release to receive a settlement share, (ii) opt out of the Agreement, or (iii) submit a Claim Form and Release along with any objections to receive a settlement share subject to resolution of the objections ("Initial Claim Period").

Rust will also mail and e-mail a reminder postcard to any member of the Rule 23 Class that failed to submit a Claim Form and Release within the Initial Claim Period (*see* Proposed Reminder Postcard, Rahman Decl. at Ex. 6), who will then have 21 days to submit a Claim Form and Release (but not to opt-out of or submit objections to the Agreement) to receive a settlement share ("Second Claim Period").

Any member of the Rule 23 Class that fails to submit a Claim Form and Release prior to the expiration of the Second Claim Period may submit a Claim Form and Release to receive a settlement share within six months from the date of Final Approval ("Late Claim Period") if such member sufficiently demonstrates good cause for failing to timely submit a Claim Form and Release.  Ex. 3 at ¶2.

To receive a settlement share from the Net Settlement Fund, a Rule 23 Class member must timely return a completed Claim Form and Release within the applicable deadlines set forth in the Notice. *Id.* at ¶1(j). Each Claim Form and Release will be filed with the Court and function as an "opt in" form with respect to FLSA claims.

### D.    Timing of Settlement Payments

Within 45 days of the Final Approval Order, EmblemHealth will pay: (i) Class Counsel attorneys' fees and reimbursement of litigation expenses approved by the Court; (ii) Rust the settlement administration costs; and (iii) Rust an amount sufficient to fund: (A) settlement payments to Qualified Claimants and (B) approved Service Payments. *Id.* at ¶4(B).

Within 10 days of receiving said payments, Rust will transmit the settlement shares to the Named Plaintiffs and Qualified Claimants by first-class U.S. Mail or make a wire transfer if the Qualified Claimant provides their wiring information in the Claim Form and Release.  *Id.* at ¶4(F)(1).

Qualified Claimants shall have 90 days after the date on the settlement checks to negotiate the checks. Any settlement checks not negotiated within 90 days will be void and the gross amount of the Individual Settlement Payment shall revert to EmblemHealth. *Id.* at ¶4(F)(4).

### E.    Eligible Employees

The eligible Rule 23 Class members are all workers employed by EmblemHealth as a

"Grievance and Appeal Specialist" or "Senior Grievance and Appeal Specialist" and who were not paid overtime compensation for all hours worked in excess of 40 in a week at any time during the Rule 23 Class Period, and who do not submit a timely Opt Out form. *Id.* at ¶1(b).

### F.    Release of Claims

Paragraph 5 of the Agreement contemplates the following with regard to releases:

- As of the date of Final Approval, each Named Plaintiff and Rule 23 Class member who does not opt out will forever and fully release EmblemHealth from any claim related to any alleged wage and hour violation under state or local law from the beginning of time to the date of Final Approval.

- As of the date of Final Approval, each Named Plaintiff and Qualified Claimant will release Emblem from any FLSA claims.

- Those who accept a separate, additional Service Award/Payment beyond the payment for the release of wage and hour claims will execute a general release against EmblemHealth. *See* Rahman Decl., at Ex. 7 (General Release).

### G.    Attorneys' Fees and Litigation Costs

Class Counsel will apply for an award of attorneys' fees in the amount of 33.33% of the Total Settlement Amount, or **$1,264,874.00**. Class Counsel will also seek reimbursement of their documented litigation expenses not to exceed **$40,000.00**. The Settlement is not conditioned upon the Court's approval of Class Counsel's request for attorneys' fees and litigation costs in such stated amounts, and any amounts not approved by the Court will be distributed to the Qualified Claimants on a pro rata basis. Ex. 3 at ¶E(2). The Court need not fully decide the attorneys' fees and costs issue at this point as such final determination need only be made after Rule 23 Class members have had the opportunity to consider the terms of the Settlement, when the Parties seek final approval of the Settlement.

### H.    Service Awards

The Named Plaintiffs and 23 opt-in party plaintiffs are seeking enhanced Service Awards

in recognition of services rendered to the Rule 23 Class, including, but not limited to: (i) commencing and discovering the claims in this suit; (ii) reviewing and approving pleadings and other filings; (iii) searching for and providing documents; (iv) reviewing documents and information provided by EmblemHealth; (v) meeting and communicating with Class Counsel at all phases of the litigation; (vi) responding to multiple rounds of discovery requests propounded by EmblemHealth; (vii) preparing and sitting for depositions; (viii) preparing for, attending and actively participating in the mediation (in the case of the Named Plaintiffs); and/or (ix) undertaking the risk of retaliation by participating in this action (although no allegations of retaliation have been made). Rahman Decl. at ¶72. The two Named Plaintiffs will seek Service Awards of **$40,000.00 each**, while 23 opt-in party plaintiffs will be seeking **$5,000.00 each**. Ex. 3 at ¶4(E)(2). The Settlement is not conditioned upon the Court's approval of the requested Service Awards, and any Service Award not approved by the Court will be distributed to the Qualified Claimants on a pro rata basis. *Id.* ¶4(E)(2).

The Court need not approve these Service Awards now, as the Parties will address those payments after all Rule 23 Class members have had the opportunity to fully consider the Settlement, when the Parties seek final Settlement approval.

### III.    CLASS AND COLLECTIVE ACTION SETTLEMENT IS APPROPRIATE

#### A.    Procedure for Class and Collective Action Settlement

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of a proposed settlement after submission to the court of a written motion for preliminary approval and certification of the settlement class;

2. Dissemination of notice of settlement to all affected class members; and

3. A fairness hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions ("Newberg")*, §§ 11.22, *et seq.* (4th ed. 2002). This process safeguards the class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests. Through this motion, the Parties and Class Counsel respectfully request that the Court take the first step and approve the following schedule as set forth in the Agreement for final resolution of this matter:

1. No later than twenty-four (24) days after the Court grants preliminary approval, Rust will mail and email the Proposed Notice to Rule 23 Class members.

2. Class Members will have forty-five (45) days to submit claim forms, opt-out, or object, and will have an additional 21 days after a reminder postcard is sent to those who do not submit a Claim Form and Release to submit same.

3. A fairness hearing will be held following the Second Claim Period on a date to be determined and ordered by the Court, with Class Counsel filing a motion for final approval in advance of the fairness hearing by a date set by the Court.

4. If the Court grants the motion, the Court will issue a final order and judgment ("Final Approval Order").

5. Within 45 days of the Final Approval Order, EmblemHealth will pay to Class Counsel approved attorneys' fees and costs, Rust the approved settlement administration costs, and Rust an amount sufficient to fund the settlement payments to Qualified Claimants and approved Service Payments.

6. Within 10 days after receipt from EmblemHealth of the Settlement Payments and Service Payments, Rust will transmit individual settlement shares to the Named Plaintiffs and Qualified Claimants.

7. Any Rule 23 Class member that failed to timely submit a Claim Form and Release will be permitted to submit a Claim Form and Release to receive a settlement share within six months from the date of Final Approval ("Late Claim Period") if they failed to timely submit a Claim Form and Release for good cause reasons.

### B.     <u>Preliminary Approval of the Settlement Is Appropriate</u>

The law favors compromise and settlement of class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("strong judicial policy in favor of settlements, particularly in the class action context"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535

(3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.,* 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation ...." *Id.* This is particularly true where, as here, the Parties have engaged in extensive litigation, arm's length negotiations with the assistance of a qualified, experienced mediator, and discovery that has allowed them to thoroughly assess all aspects of the case, including potential damages and liability.

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark,* 2009 WL 6615729, at *3 (citing *Newberg* § 11.25). To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n.*, 627 F.2d 631, 634 (2d Cir. 1980).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). If the settlement was achieved through experienced counsels' arm's length negotiations, "[a]bsent

11

fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### C. The Settlement Is Fair, Reasonable, and Adequate and Meets All Requirements for FLSA Settlement Approval

In evaluating class settlements, courts generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation" to determine whether the settlement falls within "the range of reasonableness," *Newberg* §§ 11.25, 11.26, it is useful for the Court to consider these criteria. The *Grinnell* factors are: (l) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement amount in light of the best possible recovery, and (9) the range of reasonableness of the settlement amount in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. In this case, the *Grinnell* factors weigh in favor of approval, and certainly in favor of preliminary approval.

Likewise, FLSA claims generally cannot be released unless the resolution is approved by the Secretary of Labor or judicially approved. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) ("[S]tipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."); *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

In determining whether the proposed settlement is fair and reasonable, a court

should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiffs range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion .... Given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace."

*Id.* The Agreement fully satisfies all the above criteria for the reasons set forth below.

### 1. **Litigation Through Trial Would Be Complex, Costly and Long (*Grinnell Factor 1 and Wolinsky Factor 2*)**

By reaching a favorable settlement prior to more protracted litigation, extensive class discovery, rounds of complex motion practice, and trial and appeals, the Parties seek to avoid significant expense and delay in establishing their respective claims and defenses, ensuring a recovery for the Rule 23 Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no exception.

Here, absent resolution, both sides would proceed with lengthy and significant motion practice: Plaintiffs would proceed with their motion for class certification, while EmblemHealth will move for decertification of the conditionally certified FLSA Collective. Rahman Decl. at ¶16-18. Both parties also intended to seek summary judgment on their respective positions. *Id.* at ¶18-19. Defendants have colorable arguments for their positions, including deposition testimony that addressed (at times in inconsistent fashion between and among several of the Plaintiffs) the G&A Specialists' level of independent judgment and discretion, as well as the number of hours

individuals in this position were required to and did work each week. *Id.* at ¶35, 60.

If Plaintiffs' motion for class certification is denied, then, invariably, Defendants' motion for decertification will be successful, and the Named Plaintiffs would have to proceed with their claims on an individual basis, while party plaintiffs who have opted in would need to commence separate actions. *Id.* at ¶32. Not only would class certification motion practice take many months to fully brief and be resolved, but an adverse decision would likely be appealed, causing even more delay and usage of the Parties' and the Courts' resources. *Id.* at ¶33.

Moreover, absent resolution, EmblemHealth would proceed with their motion for summary judgment on the basis that G&A Specialists were exempt under the "administrative" exemption, and would arguably have colorable arguments, including deposition testimony supporting that G&A Specialists exercise independent judgment and discretion on matters of significance, and documents such as job descriptions, resumes, and performance evaluations that seem to support the "administrative" exemption's application. *Id.* at ¶34-36. If EmblemHealth were to succeed on its motion for summary judgment, such decision would likely be appealed. *Id.* at ¶37.

The issues in this case are complex, fact-intensive, and novel. Class Counsel is unaware of any other litigations in which Grievance and Appeals Specialists (or equivalent roles) at a health insurance company have alleged misclassification for overtime purposes. *Id.* at ¶30-31. Realistically, given the fact intensive nature of this case and the sizable record (*i.e.*, nearly 35 depositions, generating thousands of pages of testimony, and over 5,000 pages of document productions), it would likely take approximately one year to get through the class certification and summary judgment motion practice stage, resulting in another year of delay for hundreds of G&A Specialists alleging unpaid wage claims going back to 2016. *Id.* at ¶39.

Appeals aside, continued litigation would be complex and time consuming. If a class is

certified, the Parties would engage in class discovery, namely the productions of thousands of pages of documents and data for Rule 23 Class members. *Id.* at ¶38, 40. Here, there are approximately 176 Rule 23 Class members, covering a period of over eight years. *Id.* at ¶41.

If Defendants are unsuccessful in their anticipated summary judgment motion, the case would proceed to trial. *Id.* at ¶43. A trial would be quite lengthy and span several weeks if not months as potentially dozens of G&A Specialists, and no less than ten EmblemHealth managers and executives, would need to testify. *Id.* at ¶44. Ultimately, it would be up to a jury to decide whether Plaintiffs are entitled to overtime, which is inherently a risky and uncertain proposition for all Parties. *Id.* at ¶45.

Even after a potential judgment at trial, any judgment likely would be appealed, further extending the litigation. *Id.* at ¶46. Settlement, on the other hand, makes monetary relief available in a prompt, efficient and relatively risk-free manner. Therefore, the first *Grinnell* factor and second *Wolinsky* factor weighs in favor of preliminary approval.

2. **The Reaction to the Settlement Has Been Positive (*Grinnell Factor 2*)**

Although notice of the Settlement has not yet been issued to the Rule 23 Class members, the Named Plaintiffs and opt in party plaintiffs have expressed their approval of the Settlement. *Id.* at ¶77. The Court should more fully analyze this factor after the Notice Period when Rule 23 Class members have had an opportunity to submit claim forms, opt-out, or object. However, given that the two Named Plaintiffs and Class Counsel have agreed to the Settlement, following protracted negotiations that included an experienced neutral mediator, this factor weighs in favor of preliminary approval.

3. **Sufficient Discovery Has Taken Place to Allow the Parties to Resolve the Case Responsibly Following Arm's Length Bargaining Between Experienced Counsel Absent Any Fraud or Collusion (*Grinnell Factor 3 and Wolinsky Factors 4 and 5*)**

The proposed settlement is the product of arm's-length negotiations between the Parties. The fact that the litigation was aggressively and expeditiously litigated by Plaintiffs' counsel, and counsel are experienced in wage-and-hour matters, eliminates any danger of fraud or collusion.

As described herein, the Parties conducted substantial discovery which was more than sufficient to resolve this action responsibly. The proper question to ask is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement ... [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176. Here, the discovery exchanged more than meets this standard, which included no less than the following:

• EmblemHealth produced a list of all G&A Specialists during the FLSA Collective period;

• EmblemHealth produced spreadsheets and documents containing compensation information for the Named Plaintiffs and opt in party plaintiffs;

• EmblemHealth produced job descriptions and other relevant correspondence and documents;

• EmblemHealth produced various spreadsheets that set forth time stamps for Plaintiffs' and opt in plaintiffs' work activities, which helped approximate the number of hours they spent working; and

• Named Plaintiffs and opt in plaintiffs provided sworn deposition testimony as to the numbers of hours they worked each week.

Rahman Decl. at ¶48. All this information and data produced by EmblemHealth (and more) was then analyzed by Class Counsel with involvement from the Named Plaintiffs. *Id.* at ¶49. Class Counsel was able to reasonably approximate, *inter alia,* (i) average income earned by the Rule 23 Class Members, (ii) estimated unpaid overtime wages for and hours worked by the Rule 23 Class

16

Members, (iii) estimated number of workweeks worked by the Class Members; and (iv) estimated potential liquidated damages. *Id.* at ¶50. These figures enabled Class Counsel to determine a reasonable and reliable estimate of class-wide damages. *Id.* at ¶51.

Of course, EmblemHealth has articulated potentially strong defenses that — while Class Counsel felt confident could be overcome — needed to be considered, including, but not limited to: (i) that Plaintiffs were properly classified as exempt administrative employees, (ii) that if EmblemHealth misclassified G&A Specialists, it was done in good faith reliance on Department of Labor guidance and applicable law, (iii) Plaintiffs did not work the volume of hours alleged in the Complaint, and (iv) EmblemHealth did not act willfully, and therefore the statute of limitations for FLSA claims should only be two years (not three), further reducing the number of claimants who could potentially recover within the two-year statute of limitations. *Id.* at ¶52.

The Parties' respective counsel each submitted lengthy mediation briefs that explored the merits and scope of damages. *Id.* at ¶22. The Parties came to each mediation with a sense of and appreciation for Class Members' claims and EmblemHealth's potential liability, as well as the defenses asserted and amount of time further protracted litigation would require. *Id.* at ¶23. Although the Parties could obtain additional information if this case proceeded to class discovery, it is unlikely that further discovery would have changed the Parties' analysis. *Id.* at ¶42; *See Frank,* 228 F.R.D. at 185 (approving settlement "in relatively early stages of discovery" where parties exchanged extensive information regarding defendant's time and pay practices and where counsel's negotiations, while "cooperative," had "been in no way collusive."). Moreover, experienced employment law and wage/hour mediator Stephen Sonnenberg of JAMS presided over the two in-person mediations and subsequent continued negotiations and proposed the settlement amount, which further demonstrates the fairness of the process and outcome. *Id.* at ¶67.

17

The Settlement represents a fair compromise that enables the parties to avoid the burden, expense and uncertainty of continued litigation in favor of a known result. Against this backdrop, the Settlement satisfies *Grinnell* factor 3 and *Wolinsky* factors 4 and 5 and thus favors preliminary approval.

> 4. **Plaintiffs Would Face Serious and Real Risks at Trial (*Grinnell Factors 4 and 5 and Wolinsky Factor 3*)**

Although the Named Plaintiffs and Class Counsel believe the case is strong, it is subject to considerable risk. It hardly needs to be mentioned that "litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

A trial on the merits in this matter would involve serious and significant risks. Plaintiffs would have to overcome EmblemHealth's defenses, including, but not limited to:

- That Class Members were exempt "administrative" employees;

- That, any misclassification was done in good faith reliance on DOL guidance and applicable law (and indeed there are no known cases brought by G&A Specialists at other health insurance companies alleging misclassification); and

- That Class Members did not work the volume of hours alleged.

While Plaintiffs believe they would ultimately establish EmblemHealth's liability, Class Counsel is experienced and realistic and understands that the outcome at trial and inevitable appeals process are inherently uncertain in terms of outcome and duration. Rahman Decl. at ¶55. Indeed, if EmblemHealth is able to establish that it correctly applied the "administrative" exemption to G&A Specialists– and there is considerable evidence, including deposition testimony from Class Members as to the level of independent judgment and discretion they exercised, and contemporaneous performance reviews and job descriptions describing the type and nature of work performed by G&A Specialists that arguably supports such designation – then Plaintiffs and the Class Members will not recover *anything*. *Id.* at ¶56. Plaintiffs also carry the burden of establishing

18

that they consistently worked more than *de minimis* hours beyond 40 hours each week, which, absent contemporaneous records documenting their actual work hours, will likely come down to a credibility determination by the jury – another inherently risky proposition. *Id.* at ¶57. The proposed Settlement alleviates these and other uncertainties and litigation risks. This factor, thus, weighs in favor of preliminary approval.

5. **Maintaining the Class Through Trial Would Not Be Simple (*Grinnell Factor 6 and Wolinsky Factors 2 and 3*)**

The risk of decertification and/or obtaining class certification and maintaining it through trial is also present. EmblemHealth has argued throughout this litigation that individualized inquiries into Plaintiffs' duties will support decertification and preclude certification. *Id.* at ¶58. Although Class Counsel disagrees, the issues in this case are novel, with no known precedent specifically applying to G&A Specialists at other health insurers prevailing on overtime misclassification claims. *Id.* at ¶59.

EmblemHealth would likely argue that specific factual inquiries conducted through depositions have, *inter alia*, (1) suggested the degree of independent judgment and discretion exercised by G&A Specialists differed among G&A Specialists, (2) suggested the nature of the work among G&A Specialists differed, including that some handle certain types of appeals and grievances, while some appear to only "triage" or do an initial assessment to determine how to categorize and classify an appeal or grievance before it reaches a fellow G&A Specialist for processing and handling, (3) suggested the level of supervision under which a G&A Specialist worked differed, (4) suggested the amount of time spent completing duties differed, (5) suggested the frequency with which G&A Specialists consulted with written guidelines or manuals differed; and (6) the nature of appeals and grievances handled by G&A Specialists differed, including the monetary value of benefits attendant to particular grievances and appeals. *Id.* at ¶60. All these

19

differences could undermine a motion for class certification.

The ultimate determination as to whether class and/or collective treatment is appropriate would be reached only after extensive and costly motion practice and discovery. *Id.* at ¶29, 33. Risk, expense and delay permeate the class certification process. Settlement eliminates this risk, expense and delay. Accordingly, this factor favors preliminary approval.

### 6. EmblemHealth's Ability to Withstand a Greater Judgment Is Not a Bar to the Settlement (*Grinnell Factor 7*)

Here, collectability against EmblemHealth is not at issue. Class Counsel and the Named Plaintiffs are aware that EmblemHealth can pay virtually any likely judgment they can obtain and still believe that the Settlement is in the best interests of the Class Members given all the attendant risks and benefits with settling at this stage. *Id.* at ¶68. Accordingly, this factor also favors preliminary approval.

### 7. The Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell Factors 8 and 9 and Wolinsky Factor 1*)

EmblemHealth has agreed to settle this case for a maximum total of **$3,795,000**. The Settlement amount represents a fair value to the Class Members given the attendant significant and uncertain risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, succeeded on all claims at trial, survived decertification, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank,* 228 F.R.D. at 186. "Instead, 'there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* "It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement

inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024 (CPS), 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where "best possible recovery would be approximately $121 million"). Furthermore, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.,* No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *5 (S.D.N.Y. May 14, 2004).

Weighing the benefits of the Settlement against available evidence and risks associated with litigation, the settlement amount is reasonable and represents a fair value to Class Members. The total maximum settlement amount is **$3,795,000**. Based on Class Counsel's estimates of the Class Members' total number of workweeks during the Class Period (approximately 42,225) and average weekly wage rate (approximately $1,000/week), this settlement amount equates to a finding that each Class Member worked **9 hours of overtime each and every workweek** as a G&A Specialist. *Id.* at ¶63. In contrast, a reasonable, realistic range of Class Members' possible recovery, based on a reasonable finding that they each worked, on average, **7.5 overtime hours for 75% of their workweeks, is between $2.5 million (without liquidated damages) and $5 million (with liquidated damages).** *Id.* at ¶64. Of course, these numbers are not discounted for the risks Plaintiffs would face were this case to continue to the class certification and summary judgment stages.[1] *Id.* at ¶65.

---

[1]    This damages estimate does not include statutory damages for wage notice and statement violations brought under the Wage Theft Prevention Act ("WTPA"). Given recent Second Circuit case law addressing the issue of standing to bring claims under this statute, the law is unsettled as to whether class claims for WTPA violations are sustainable given the requirement to articulate "downstream harm" or a "plausible theory as to how the employee was injured by the defendants' failure to provide the requisite documents" to establish standing. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308, 309 (2d Cir. 2024) (analyzing Article III standing in the context of NYLL wage notice and statement claims and reiterating that supplemental jurisdiction does not excuse a plaintiff from needing to

The Named Plaintiffs have been advised of the potential upside of proceeding on the merits but believe the settlement at this stage is in the best interests of the Class Members. Class Counsel agrees. *Id.* at ¶66. Moreover, experienced employment law and wage/hour mediator Stephen Sonnenberg of JAMS presided over the two in-person mediations and the subsequent continued negotiations post-mediation and proposed this settlement amount, which further demonstrates the fairness of the process and outcome. *Id.* at ¶67.

Therefore, this factor also weighs in favor of preliminary approval and, because the Settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," (*Frank,* 228 F.R.D. at 184), the Court should grant preliminary approval.

8. **Presence of Other Employees Situated Similarly to Plaintiffs, the Likelihood that Plaintiffs' Circumstance Will Recur, and a History of FLSA Non-Compliance By Defendants (*Wolinsky* Counter-Factors 1, 2 and 3)**

The presence of other employees situated similarly to Plaintiffs should not weigh against approval of the Settlement as such employees will have the option to either opt in to the Settlement and receive a payment from the settlement fund or exclude themselves and preserve their claims. There is also not a particularly strong likelihood that Plaintiffs' circumstances will recur as EmblemHealth is on notice of the nature of Plaintiffs' misclassification claims and are cognizant of the potential risks of engaging in questionable wage practices. If anything, the significant monetary settlement should incentivize EmblemHealth to ensure that Plaintiffs' and the Class Members' circumstances do not recur.

Moreover, as this is the only FLSA action that has ever been brought against EmblemHealth by G&A Specialists, it does not appear that Defendants have a history of "FLSA non-compliance."

---

demonstrate standing for a state law statutory damages claim).

9. **Desirability of a Mature Record and the Development of the Law (*Wolinsky* Counter-Factor 4)**

Since the parties engaged in substantial discovery prior to reaching a class resolution with the assistance of an experienced neutral, there is not a compelling desire for a more mature record, as further class discovery will not likely change the parties' perspectives as to their legal positions or potential damages exposure. Moreover, while counsel is unaware of any other lawsuits that have specifically challenged the classification of G&A Specialists or equivalent roles at other health insurance companies, there have been other misclassification actions brought by employees in similar positions at other insurance companies who, like G&A Specialists, perform an "investigative" function with regard to insurance claims and coverage determinations. *See Hinely v. Am. Family Mut. Ins. Co.*, 275 F.Supp.3d 1229 (D. Colo. 2016) (misclassification suit by claims adjusters at property and casualty insurance company); *Calderon v. GEICO*, 908 F.3d 111 (4th Cir. 2015) (security investigators working in GEICO's Claims Department); *Clark v. Centene*, 656 Fed. Appx. 688 (5th Cir. 2016) (case managers at managed care company that helps coordinate health care coverage). As such, there is not a compelling need to advance the development of this particular area of law that outweighs the benefits of settlement.

## IV. <u>PROVISIONAL CERTIFICATION IS APPROPRIATE</u>

For settlement purposes only, Plaintiffs seek to certify the following proposed Rule 23 Class:

> All workers employed by EmblemHealth as a "Grievance and Appeal Specialist" or "Senior Grievance and Appeal Specialist" and who were not paid overtime compensation for all hours worked in excess of 40 in a week at any time from April 8, 2016 to the date of preliminary approval.

As discussed below, the proposed class meets the requirements for class certification, and EmblemHealth consents to provisional certification for settlement purposes only.

Conditional settlement approval, provisional class certification and appointment of Class

Counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification to all Class Members of the terms of the proposed Agreement, and setting the date and time of the final approval hearing.

The proposed Rule 23 Class meets all Rule 23 standards. Under Rule 23(a), a class action may be maintained if all prongs of Rule 23(a) are met, and one prong of Rule 23(b). Rule 23(a) requires:

(1)    the class be so numerous that joinder of all members is impracticable;

(2)    questions of law or fact common to the class;

(3)    claims or defenses of the representative parties that are typical of claims or defenses of the class; and

(4)    the representative parties to fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Fed. R. Civ. P. 23(b)(3) requires the court to find that:

> questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* at (b)(3). "In the Second Circuit, Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility."' *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,* 237 F.R.D. 26, 31 (E.D.N.Y. 2006). Given that there will be no trial, the Court need not consider the manageability requirement of Federal Rule 23(b)(3)'s superiority prong to approve this settlement. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

A.    **<u>Numerosity</u>**

There are approximately **<u>176 potential Class Members</u>**, which courts have found to be more than sufficient for numerosity. *See*, *e.g.*, *Novella v. Westchester County*, 443 F. Supp. 2d 540, 546–47 (S.D.N.Y. 2006) (class of 24 sufficient).

### B.    Commonality

The commonality requirement tests "whether the named plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benevolent Ass 'n, v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983). Courts look for a "unifying thread" among claims. *Kimean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).

The claims of the Named Plaintiffs and Class Members clearly have several common issues, including: (i) whether they were exempt from overtime, (ii) whether they worked over 40 hours per week, (iii) whether EmblemHealth acted in good faith in not paying overtime, and (iv) whether they were provided accurate notices and wage statements.  Rahman Decl. at ¶69. Courts have found similar questions to establish commonality. *See*, *e.g.*, *Aponte v. Comprehensive Health Mgmt. Inc.,* No. 10 Civ. 4825 (PKC), 2011 WL 2207586, at *9 (S.D.N.Y. June 2, 2011) (commonality where common questions included "whether defendant has failed to compensate class members for work performed in excess of forty (40) hours per workweek and whether defendant has a policy of misclassifying its Benefit Consultants as exempt from coverage of the overtime provisions of the NYLL").

### C.    Typicality

Rule 23 requires the claims of the representative be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank,* 228 F.R.D. at 182. "Minor variations underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct"

at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936- 37 (2d Cir. 1993). Here, Named Plaintiffs have alleged their claims arise from the same factual and legal circumstances of the Class Members' claims in that they: (i) were employed in the same job titles, (ii) had similar job duties and responsibilities, and (iii) were paid by EmblemHealth under the same wage practices and policies.  Rahman Decl. at ¶70.

### D.    Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In part, "the adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.,* No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007). Here, there has been no assertion that Named Plaintiffs have interests antagonistic to or at odds with those of Class Members. Rahman Decl. at ¶71.  Rather, Named Plaintiffs have shown their commitment to the Class not only by engaging experienced counsel to litigate an issue that had never been challenged before, but by: (i) reviewing and approving pleadings and other filings, (ii) searching for and providing documents, (iii) reviewing documents and information provided by Defendants, (iv) meeting and communicating with Class Counsel at all phases of the litigation, (v) preparing and sitting for all-day in person depositions, traveling from Florida to New York City at their own cost; (vi) preparing for, attending, and actively participating in the mediation sessions, and/or (vii) undertaking the risk of retaliation.  *Id.* at ¶72.

### E.    Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc.*, 521 U.S. at 623.

### 1. Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). Plaintiffs contend that the essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery,* 227 F.R.D. 159, 173 (N.D.N.Y. 2005). Plaintiffs also contend that because a defense "may arise and affect different class members differently does not compel a finding that individual issues predominate over common ones." *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 339 (S.D.N.Y. 2004).

Finally, Plaintiffs contend that where claims are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York,* 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Named Plaintiffs assert that Class Members' core factual allegations and legal theories predominate over any factual or legal variations among Class Members. *See Torres v. Gristede's Corp.,* No. 04 Civ. 3316 (PAC), 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages.").

### 2. A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to superiority, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring individual actions; and the desirability of concentrating the litigation of the claims in the forum. Plaintiffs contend that class adjudication by settlement is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, rather than proceeding with several dozen individual trials. Rahman Decl. at ¶73; *Khait v. Whirlpool Corporation,* 2010 WL 2025106, at *3 (E.D.N.Y. Jan. 20, 2010). Plaintiffs also contend that concentrating the litigation in this Court for settlement is desirable because EmblemHealth is headquartered in and conducts business, and many Class Members reside, within this jurisdiction. *Id.* at ¶74.

Moreover, Plaintiffs contend that many Class Members likely do not have resources to litigate claims individually. *Id.* at ¶75. In addition, employing the class device in the context of this settlement avoids waste and delay and potentially repetitive proceedings and inconsistent judgments. *Id.* at ¶76.

## V.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL AND THEIR REQUESTED FEES AND COSTS SHOULD BE PROVISIONALLY <u>APPROVED</u>

Filippatos PLLC should be appointed Class Counsel and the Court should provisionally approve their requested attorneys' fees award in the amount of 33.33% of the Total Settlement Amount, or **<u>$1,264,874.00</u>**, and reimbursement of their documented litigation expenses not to

exceed **$40,000.00**.

Rule 23(g) sets forth the criteria courts should consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action", (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action", (3) "counsel's knowledge of the applicable law", and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs contend that Filippatos PLLC has met these criteria. Filippatos PLLC has done substantial work identifying, investigating and prosecuting the Class Members' claims. Rahman Decl. at ¶81. Additionally, Plaintiffs contend that lead counsel, Filippatos PLLC managing partner Tanvir H. Rahman, has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, is well-versed in wage and hour and class action law, and is well-qualified to represent the interests of the class. *Id.* at ¶82. Finally, Filippatos PLLC has committed substantial resources to this action as evidenced by its attorney time/billing records (Rahman Decl. at Ex. 8) and expense records (Ex. 9). Thus, Filippatos PLLC should be appointed Class Counsel.

Additionally, in wage and hour action settlements, courts often use the lodestar method of calculation as a "cross check" regarding the reasonableness of the attorneys' fees. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co., Inc.*, No. 97 Civ. 6742 (DLC), 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check). The

lodestar is determined by multiplying the hours reasonably expended by a reasonable hourly rate, followed by a multiplier based on the quality of representation and results achieved. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). Typically, courts use multipliers of 2 to 6 times the lodestar. *See Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472 (KBF)(DCF), 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (approving one-third of approximately $6.9 million fund as attorneys' fees, requiring a *3.8 multiplier* on the lodestar cross-check); *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (awarding one- third of $4.9 million settlement as attorneys' fees despite requiring a *lodestar multiplier of 6.3); Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712 (PAC), 2014 WL 5794655, at *5 (S.D.N.Y. Nov. 4, 2014) (approving one-third of $3.8 million settlement as attorneys' fees, despite a *4.4 times lodestar multiplier); Clem v. Keybank, N.A.*, No. 13 Civ. 789 (JCF), 2014 WL 2895918, at *9 (S.D.N.Y. June 20, 2014) (approving one third of $3.5 million settlement fund, despite requiring a *3.5 lodestar multiplier).*

Under the Settlement Agreement, Plaintiff's counsel's attorneys' fees will be $1,264,874. This requested attorneys' fees figure represents a multiplier of 2.4 of Plaintiffs' counsel's lodestar figure, which totals approximately $522,152.50.[2] *See* Ex. 8 (Billing Records). Moreover, the hourly rate for Plaintiffs' lead counsel used to determine this lodestar is the same hourly rate to which hourly paying clients have agreed to pay. *See* Ex. 10 (representative retainer agreements).

---

[2]    Courts in this district have approved hourly rates consistent with those used to compute Plaintiffs' counsel's lodestar. *See In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 Civ. 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (finding reasonable attorneys' fees based on hourly rates ranging from $750 (partner) to $650 (associate)); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (finding reasonable hourly rates ranging from $700 to $750 per hour); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220-22 (S.D.N.Y. 2015) (approving award for one third of settlement based on counsel's reported typical hourly rates of $650-950/hour for partners, $350-600/hour for associates, and $180/hour for staff and paralegals in FLSA/ NYLL overtime misclassification action); *CBF Industria DE Gusa S/A v. AMCI Holdings, Inc.*, 342 F.R.D. 84, 89 (S.D.N.Y. 2022) (awarding attorneys' fees of between $320-480 for associates and between $475-775 for counsel and partners).

The quality of representation factor also favors settlement. To determine the quality of representation, courts often review the recovery obtained and the background and experience of the attorneys involved in the action. *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467). Here, Plaintiffs' counsel obtained a significant recovery for Plaintiffs and the Class Members. Moreover, Plaintiffs' counsel has substantial experience prosecuting and favorably resolving wage-and-hour matters (Rahman Decl. at ¶82), and Plaintiffs' counsel's skill and aggressive prosecution of this matter is directly responsible for this good result.

Moreover, Plaintiffs' counsel is seeking reimbursement for the litigation costs and expenses related to Plaintiffs' claims, which to date, has totaled $37,935.09. *See* Ex. 9 (Expense Records). Plaintiffs' counsel's expenses were necessary and directly related to the representation and ultimate result.    Accordingly, the Court should provisionally approve Plaintiffs' counsel's requested attorneys' fee award and reimbursement of litigation costs.

## VI.    <u>THE PROPOSED NOTICE AND AWARD DISTRIBUTION ARE FAIR</u>

The content of the Proposed Notice fully complies with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), a class action notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)    that a class member may appear through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

31

(vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

The Proposed Notice satisfies each of these requirements. *See* Rahman Decl., Ex. 4. Additionally, it describes the terms of the Agreement as well as the date, time, and place of the final approval hearing, how to object, and how to opt-out, and also details the proposed fees/costs award and service payments. *See id*.

Lastly, the settlement distribution is fair.  Qualified Claimants will receive a portion of the Settlement Amount based on the amount of time spent working as G&A Specialists during the relevant period. This is appropriate as the amount of time spent working for EmblemHealth in the G&A Specialist role directly correlates with the amount of damages for unpaid overtime wages.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs and EmblemHealth respectfully jointly request that the Court's grant preliminary approval of the attached proposed Settlement Agreement.

Dated: June 13, 2025
       New York, New York

Respectfully submitted,


Filippatos PLLC                              Cozen O'Connor LLP

By: _Tan R_____ /s/____                     By: _____/s/_____
Tanvir H. Rahman                             Michael C. Schmidt
Parisis G. Filippatos                        3 World Trade Center
199 Main Street                              175 Greenwich Street, 55th Floor
White Plains, NY 10601                       New York, NY 10007
Telephone/Fax: (914) 984-1111                Telephone: (212) 453-3937
trahman@filippatoslaw.com                    Facsimile: (866) 736-3682
pgf@filippatoslaw.com                        mschmidt@cozen.com


*Counsel for Plaintiffs and Proposed Class*   *Counsel for Defendants*
*Counsel*

**<u>Certification of Compliance With Word Limit</u>**

I, Tanvir Rahman, counsel for Plaintiffs in the above-captioned matter, pursuant to Rule 5(B) of the Individual Rules and Practices in Civil Cases of The Honorable Jennifer H. Rearden, United States District Judge, certify that this memorandum of law complies with the 10,000 word limit granted by the Court on June 6, 2025. *See* Dkt. No. 100. The number of words in this document, exclusive of the caption, table of contents, table of authorities, signatures blocks, and this certificate is 9,975.

_____
Tanvir H. Rahman