**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DASYA MARÍA CORDOVA and ADA CASASUS, on
behalf of themselves and a class and collective of
similarly situated persons,

        Plaintiff,

    – against –

EMBLEMHEALTH INC. and EMBLEMHEALTH
SERVICES COMPANY, LLC,

        Defendants.

---

Case No. 22-CV-2933 (JHR)

**JOINT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT AND APPROVAL OF SERVICE AWARDS**


**FILIPPATOS PLLC**

By: _____

Tanvir H. Rahman
Parisis G. Filippatos
199 Main Street, Suite 800
White Plains. New York 10601
T.F/: 914.984.1111
trahman@filippatoslaw.com
pgf@filippatoslaw.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.    Background ...................................................................................................... 1

     A. Allegations of the Complaint ....................................................................... 1

     B. Procedural History ........................................................................................ 2

II.    SUMMARY OF THE SUBMITTED PROPOSED SETTLEMENT ...................... 5

     A. Settlement Consideration ............................................................................. 5

     B. Settlement Allocation Formula .................................................................... 5

     C. Settlement Claims Administrator and Notice to Class Members ................ 6

     D. Timing of Settlement Payments .................................................................. 7

     E. Eligible Employees ...................................................................................... 7

     F. Release of Claims ........................................................................................ 8

     G. Attorneys' Fees and Litigation Costs ......................................................... 8

     H. Service Awards ............................................................................................ 8

III.   CLASS AND COLLECTIVE ACTION SETTLEMENT IS APPROPRIATE ...................... 9

     A. Procedure for Class and Collective Action Settlement ............................... 9

     B. Preliminary Approval of the Settlement Is Appropriate .............................. 9

     C. The Settlement Is Fair, Reasonable and Adequate and Meets All Requirements for FLSA Settlement Approval ............................................................................................ 9

        1. Litigation Through Trial Would Be Complex, Costly and Long *(Grinnell Factor 1 and Wolinsky Factor 2)* ...................................................................................... 10

        2. The Reaction to the Settlement Has Been Positive *(Grinnell Factor 2)* ................ 12

        3. Sufficient Discovery Has Taken Place to Allow the Parties to Resolve the Case Responsibly Following Arms Length Bargaining Between Experienced Counsel Absent Any Fraud or Collusion *(Grinnell Factor 3 and Wolinsky Factors 4 and 5)* ............................................. 13

        4. Plaintiffs Would Face Serious and Real Risks at Trial *(Grinnell Factors 4 and 5 and Wolinsky Factor 3)* ................................................................................................... 15

        5. Maintaining the Class Through Trial Would Not Be Simple *(Grinnell Factor 6*

*and Wolinsky Factors 2 and 3)* ........................................................................................16

      6.  EmblemHealth's Ability to Withstand a Greater Judgment Is Not a Bar to the Settlement *(Grinnell Factor 7)* ..............................................................................16

      7.  The Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation *(Grinnell Factors 8 and 9 and Wolinsky Factor 1)* ...........................17

      8.  Presense of Other Employees Situated Similarly to Plaintiff, the Likelihood that Plaintiffs' Circumstance Will Recur, and a History of FLSA Non-Compliance By Defendants (*Wolinsky* Counter-Factors 1, 2, and 3) ........................................................22

      9.  Desirability of a Mature Record and the Development of the Law (*Wolinsky* Counter-Factor 4) ................................................................................................23

IV.   PROVISIONAL CERTIFICATION IS APPROPRIATE ....................................................19

   A.  Numerosity ..................................................................................................20

   B.  Commonality ..............................................................................................20

   C.  Typicality ....................................................................................................21

   D.  Adequacy of the Named Plaintiffs ..............................................................21

   E.  Certification Is Proper Under Rule 23(b)(3) ................................................23

      1.  Common Questions Predominate .........................................................23

      2.  A Class Action Is a Superior Mechanism ............................................24

V.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL AND THEIR REQUESTED FEES AND COSTS SHOULD BE PROVISIONALLY APPROVED ........25

VI.  THE PROPOSED NOTICE AND AWARD DISTRIBUTION ARE FAIR ......................25

CONCLUSION ................................................................................................................28

# TABLE OF AUTHORITIES

**CASES**

*Aboud v. Charles Schwab & Co.*,
   2014 No. 14 Civ. 2712 (PAC), 2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014) .................... 25

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) .......................................................................................... 24, 27

*Aponte v. Comprehensive Health Mgmt. Inc.*,
   2011 No. 10 Civ. 4825, 2011 WL 2207586 (S.D.N.Y. June 2, 2011) ................................ 25

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................... 25

*Cagan v. Anchor Sav. Bank FSB*,
   1990 No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................ 17

*Calderon v. GEICO*,
   908 F.3d 111 (4th Cir. 2015) ................................................................................... 19

*CBF Industria DE Gusa S/A v. AMCI Holdings, Inc.*,
   342 F.R.D. 84 (S.D.N.Y. 2022) ................................................................................ 30

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015) .................................................................................... 12

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................................... 9

*Clark v. Centene*,
   656 Fed. Appx. 688 (5th Cir. 2016) ......................................................................... 23

*Clark v. Ecolab, Inc.*,
   2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ............................................................ 9

*Clem v. Keybank, N.A.*,
   2014 No. 13 Civ. 789 (JCF), 2014 WL 2895918 (S.D.N.Y. June 20, 2014) .................... 25

*Cordes & Co. Min. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ...................................................................................... 23

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................... 11, 17, 20, 18, 25

*Gen. Tel. Co. SW v. Falcon*,
   457 U.S. 147 (1982) ............................................................................................... 20

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ................................................................................ 29

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) .............................................................................. 24

*Guthrie v. Rainbow Fencing Inc.*,
    113 F.4th 300 (2d Cir. 2024) ............................................................................. 21

*Hernandez v. Merrill Lynch & Co.*,
    No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ...................... 25

*Hinely v. Am. Family Mut. Ins. Co.*,
    275 F.Supp.3d 1229 (D. Colo. 2016) ................................................................ 19

*In re Austrian & German Bank Holocaust Litig.*,
    80 F.Supp.2d 164 (S.D.N.Y. 2000) ............................................................. 13, 16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 No. 05 Civ. 10240, 2007 WL 2230177 (2007) ......................................... 9

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................ 29, 25

*In re Nissan Radiator/Transmission Cooler Litig.*,
    2013 No. 10 Civ. 7493 (VB), 2013 WL 4080946 (S.D.N.Y May 30, 2013) ...... 30

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................... 15

*In re Telik, Inc. Sec. Litig.*,
    576 F.Supp.2d 570 (S.D.N.Y. 2008) ................................................................. 30

*In re Traffic Exec. Ass'n.*,
    627 F.2d 631 (2d Cir. 1980) .............................................................................. 11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ......................................................................... 10, 13

*Khait v. Whirlpool Corporation*,
    2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .................................................... 24

*Kimean v. Local 363, Int'l Bhd. of Teamsters*,
    109 F.R.D. 391 (S.D.N.Y. 1986) ....................................................................... 20

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) .............................................................................. 25

*Marriott v. Cnty. of Montgomery*,
    227 F.R.D. 159 (N.D.N.Y. 2005) ....................................................................... 23

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998) ............................................................................... 9

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ...................................................................... 27

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) ...................................................................... 27

*Novella v. Westchester County*,
    443 F.Supp.2d 540 (S.D.N.Y. 2006) ................................................................ 24

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................ 17

*Port Auth. Police Benevolent Ass'n, v. Port Auth. of N.Y. & N.J.*,
    698 F.2d 150 (2d Cir. 1983) ............................................................................. 20

*Raniere v. Citigroup Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015) ...................................................................... 30

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................ 24

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ............................................................................. 21

*Taft v. Ackermans*,
    2007 No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ....................... 25

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
    2004 No. 01 Civ. 11814, 2004 WL 2997957 (S.D.N.Y. May 14, 2004) ........................... 17

*Torres v. Gristede's Corp.*,
    2006 No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ........................... 27

*Toure v. Cent. Parking Sys.*,
    2007 No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ........................... 21

*Varljen v. H.J. Meyers & Co., Inc.*,
    2000 No. 97 Civ. 6742 (DLC), 2000 WL 1683656 (2000) ................................................ 29

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ....................................................................... 10, 9

*Wolinsky v. Scholastic Inc.*,
    900 F.Supp.2d 332 (S.D.N.Y. 2012) .............................................................. 12, 10

**FEDERAL RULES**

Fed. R. Civ. P. 23(e) ........................................................................................................ 9

Fed. R. Civ. P. 23(a) ...................................................................................................... 20

Fed. R. Civ. P. 23(a)(4) ................................................................................................. 21

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 24

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................... 25

Fed. R. Civ. P. 23(g)(1)(B) ........................................................................................... 25

Fed. R. Civ. P. 23 ................................................................................................. *Passim*

Plaintiffs Dasya Cordova and Ada Casasus (the "Named Plaintiffs"), on behalf of themselves and the proposed Rule 23 Class (defined on pages 7 and 19 for settlement purposes only) (Named Plaintiffs and the Rule 23 Class referred to as "Plaintiffs"), with Defendants EmblemHealth Inc. and EmblemHealth Services Company, LLC (together, "EmblemHealth") (altogether the "Parties") jointly move for final approval of the proposed Joint Class and Collective Action Settlement Agreement (the "Agreement," attached as **Ex. 1** to the Declaration of Tanvir H. Rahman ("Rahman Decl.")) settling the class and collective claims alleged in the Complaint (the "Settlement"), certification of the Rule 23 Class under Fed. R. Civ. P. ("Rule") 23 and 29 U.S.C. § 216(b) for settlement purposes, and approval of requested service awards. The Parties respectfully request that the Court enter the Proposed Order Granting Final Approval of Class and Collective Action Settlement. *See* Rahman Decl., **Ex. 2** (Proposed Final Order).

## I.    Background

### A.    Allegations of the Complaint

The proposed Settlement includes the Named Plaintiffs and Rule 23 Class members who were and/or are employed by EmblemHealth as "Grievance and Appeals Specialists" and "Senior Grievance and Appeals Specialists" (together, "G&A Specialists") between April 8, 2016 to the date of preliminary approval of the Agreement, which was August 5, 2025, and who have not opted out of the Settlement. The Named Plaintiffs allege that G&A Specialists worked over 40 hours per week and were misclassified as exempt from overtime pursuant to the "Administrative" exemption and were thus denied overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *See* Dkt. No. 1, Rahman Decl., **Ex. 3** (Complaint).   Named Plaintiffs allege that G&A Specialists investigate and process appeals and grievances related to health insurance claim determinations (*i.e.*, if a claim is denied in whole or in part) submitted by

1

medical providers who accept an EmblemHealth insurance plan pursuant to pre-established processes and guidelines from which they cannot deviate. *Id.*, ¶¶21-55. Their duties include: (i) processing several dozen appeals and grievances at one time; (ii) collecting information and records concerning appeals and grievances to pass along to decisionmakers — usually medical coordinators/directors, nurses, or physicians; (iii) memorializing decision in letters drafted pursuant to templates; and (iv) notifying a grievant of missing or incomplete information so they can amend or supplement their submission. *Id.* EmblemHealth has denied the allegations in the Complaint and, specifically, that Plaintiffs were misclassified as "exempt" for purposes of federal and state law. EmblemHealth maintains that Plaintiffs were required to, and did, perform primary job duties that satisfied the applicable exemption requirements.

### B.    Procedural History

On April 8, 2022, Named Plaintiffs commenced this action as a putative class and collective action. *Id.* On April 21 and 22, 2022, six additional party plaintiffs joined this case. Dkt. Nos. 9-14. Defendants filed their Answer on June 6, 2022. Dkt. No. 16. In the ensuing months, the Parties negotiated conditional certification of an FLSA collective and Court-authorized notice. Rahman Decl., ¶24. On August 23, 2022, the Court issued the proposed conditional certification order. Dkt. No. 26. After collective action notice was sent to over 100 G&A Specialists employed from April 8, 2019, to the date of the notices, 18 party plaintiffs opted into this case. Dkt. Nos. 29-39; 41-44; 51; 56; 60; Rahman Decl., ¶28.

Over the following nearly two years, the Parties engaged in significant discovery. This included the exchange of thousands of pages of documents and spreadsheets, including internal policies, manuals, correspondence, and wage and time records. *Id.*, ¶¶29-32. Defendants issued multiple rounds of requests for productions and interrogatories to the Named Plaintiffs and the 24

party plaintiffs who opted in. *Id.*, ¶31. Plaintiffs deposed six EmblemHealth executive and managerial-level employees. *Id.*, ¶41. Defendants deposed the two Named Plaintiffs and 23 party plaintiffs. *Id.*, ¶¶34-35. Following depositions, the Parties requested additional documents and information from one another. *Id.*, ¶¶39-41.

Several discovery disputes arose between the Parties, all but one of which were resolved after meeting and conferring. *Id.*, ¶¶42-43. The Parties raised one discovery dispute related to the production of cell phone records (Dkt. Nos. 71 and 74) which was resolved in an oral order issued on April 11, 2024.

Following fact discovery, the Parties anticipated substantial motion practice that would have continued this litigation for at least another year. Rahman Decl., ¶¶46-54.  Plaintiffs reserved their right to move for Rule 23 class certification until the close of fact discovery. *Id.*, ¶47. Defendants intended to oppose any such motion for class certification, move for decertification of the conditionally certified FLSA collective, and move for summary judgment on the basis that G&A Specialists were exempt from overtime pursuant to the "administrative" exemption. *Id.*, ¶48. Plaintiffs also intended to move for summary judgment on the basis that they were *not* exempt, were entitled to liquidated damages, and that a three-year statute of limitations was applicable to their FLSA claims. *Id.*, ¶54.

However, the Parties agreed to explore a global resolution before litigation costs and attorneys' fees escalated further and agreed to mediate with Stephen Sonnenberg, Esq. of JAMS, who is experienced in mediating wage and hour matters. *Id.*, ¶55. Prior to the mediation, the Parties met and conferred several times to discuss their views on potential damages and data informative in determining damages. *Id.*, ¶56. The Parties each submitted detailed mediation briefs and came to the mediation with an understanding of each side's perspective. *Id.*, ¶¶58-59; 63. The Parties

met for a full-day, in-person mediation in New York City on May 30, 2024, attended by counsel, Named Plaintiff Dasya Cordova, and an executive from EmblemHealth. *Id.*, ¶¶65-66. The Parties did not reach a resolution, but agreed to schedule a second day of mediation for July 10, 2024. *Id.*, ¶67. The Parties did not come to a resolution at the second mediation session, but in the ensuing weeks, as the Parties prepared for motion practice, the Parties reengaged in settlement discussions. *Id.*, ¶68. Ultimately, with the significant help of Mediator Sonnenberg, the Parties agreed to resolve this case on a full class basis for a total of **$3.795 million** on August 22, 2024.  *Id.*, ¶69.

The Parties then negotiated the terms of a full settlement agreement and submitted a joint motion for preliminary settlement approval on November 19, 2024. *See* Dkt. Nos. 90-91. On May 19, 2025, the Court held a telephone conference to discuss the preliminary approval motion. *See* Rahman Decl., **Ex. 4** (May 19, 2025, Conference Transcript). Thereafter, on May 22, 2025, the Parties submitted a revised Agreement and revised proposed class action notice (the "Notice") reflecting changes suggested by the Court, as well as legal support for Court approval of general releases provided in exchange for service awards in class action settlements. Dkt. No. 95.

Subsequently, the Court held a second telephone conference on May 30, 2025. *See* Rahman Decl., **Ex. 5** (May 30, 2025, Conference Transcript). Following this conference, on June 6, 2025, after considering caselaw referenced and comments made by the Court, the parties requested leave to revise and resubmit their joint motion for preliminary approval to explicitly address the FLSA settlement approval factors set forth in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 32 (S.D.N.Y. 2012), and to provide factual support for Class Counsel's requested attorneys' fees and costs award in the form of time and billing records. *See* Dkt. No. 99.

On June 13, 2025, the Parties submitted a revised joint motion for preliminary approval,

revised Agreement, and revised Notice. *See* Dkt. Nos. 103-104. On August 5, 2025, the Court granted the motion for preliminary approval and set a Final Approval Hearing date of December 16, 2025. Dkt. No. 105. The Parties have since, through third-party claims administrator Rust Consulting, Inc. ("Rust"), disseminated the Court-approved Notices to 180 putative members of the Rule 23 Class, with only one person opting out of, and no person objecting to, the Settlement. *See* Rahman Decl., **Ex. 6** (Declaration of A. Schwartz, of Rust Consulting, Inc.), ¶¶10, 11, 23, 24.

## I.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.    Settlement Consideration

EmblemHealth has agreed to pay a maximum amount of **$3,795,000** (the "Total Settlement Amount") to resolve this action on a class and collective basis. The Total Settlement Amount will be the amount from which: (i) all Plaintiffs who filed timely and valid Claim Forms ("Qualified Claimants") receive their allocated share; (ii) Class Counsel is compensated for their fees and reimbursed for expenses; (iii) the Named Plaintiffs and 23 opt-in party plaintiffs who participated in the discovery process (the "Opt-in Plaintiffs") receive Service Awards; and (iv) settlement administration costs are paid. Ex. 1, ¶1(k-l).

### B.    Settlement Allocation Formula

The portion of the Total Settlement Amount to be distributed to each Qualified Claimant will be determined using the following allocation formula: for each seven (7) days employed at any time in the G&A Specialist role from April 8, 2016, to August 5, 2025 (the "Rule 23 Class Period"), assign 1 point. Each Rule 23 Class member's estimated individual settlement payment will be determined by dividing their points by the total points of the entire Rule 23 Class, multiplied by the Net Settlement Fund (the Total Settlement Amount minus Service Awards, settlement administration costs, and attorneys' fees and litigation costs). To the extent there are any Service

Awards or attorneys' fees and litigation costs not approved by the Court ("Unapproved Amounts"), such Unapproved Amounts will be distributed to each Qualified Claimant on a pro rata basis. **Ex. 1**, ¶4(E)(1).

        **C.**      <u>**Settlement Claims Administrator and Notice to Class Members**</u>

The parties have selected Rust as the settlement claims administrator. Rust's requested fees are **<u>$18,000</u>** and will be paid from the Total Settlement Amount. *Id.*, ¶4(D); **Ex. 6**, ¶28. On August 12, 2025, EmblemHealth provided Rust with a spreadsheet listing the names, dates of employment during the Rule 23 Class Period, phone numbers, and last known mailing and e-mail addresses of the Rule 23 Class for purposes of mailing and emailing notice packets. *Id.*, ¶8.; **Ex. 7** (Notice Template); **Ex. 8** (Claim Form and Release Template).

Following receipt of this spreadsheet, Rust mailed and emailed the notice packets on September 4, 2025, to 180 putative Rule 23 Class members. **Ex. 6**, ¶¶10-11. The Rule 23 Class members were given 45 days from mailing, or until October 19, 2025, to: (i) submit a Claim Form and Release to receive a settlement share, (ii) opt out of the Agreement, or (iii) submit a Claim Form and Release along with any objections to receive a settlement share subject to resolution of the objections ("Initial Claim Period"). *Id.*, During the Initial Claim Period, 90 putative Rule 23 Class members submitted a Claim Form and Release (which could have been returned by mail, email, or through a website ([www.GandASpecialistOvertimeLawsuit.com](http://www.GandASpecialistOvertimeLawsuit.com)), and one putative Rule 23 Class member submitted an opt-out form. *Id.*, ¶¶4-6; 14; 23, ; **Ex. 9** (opt-out form).

The next day, on October 20, 2025, Rust mailed and e-mailed a reminder notice to 88 putative Rule 23 Class members who had not yet submitted a Claim Form and Release (or opted out), who were given an additional 21 days, or until November 10, 2025, to do so ("Second Claim Period"). *See* **Ex. 6**, ¶¶15-16; **Ex. 10** (Reminder Notices). During the Second Claim Period, an

additional 28 putative Rule 23 Class members submitted a Claim Form and Release.  **Ex. 6**, ¶17. In total, out of 180 putative Rule 23 Class members, 118, or 65.5% have submitted a valid Claim Form and Release, whose claims comprise of 83% of the Net Settlement Fund, i.e., $1,888,056.44 out of a possible $2,277,126.00.  *Id.*, ¶21, 25; Rahman Decl., ¶84.   Rust estimates the average pro rate settlement share to be ***$16,000.48***, with the highest share being approximately ***$34,675*** (given to 15 Qualified Claimants).  **Ex. 6**, ¶26.

Any member of the Rule 23 Class that has failed to submit a Claim Form and Release may still do so and receive a settlement share within six months from the date of Final Approval ("Late Claim Period") if they sufficiently demonstrate good cause for failing to timely submit a Claim Form and Release. **Ex. 1**, ¶4(A)(2)(a). Each valid Claim Form and Release has been filed with the Court, and functions as an "opt in" form with respect to FLSA claims. *See* Dkt. No. 110.

### D.    Timing of Settlement Payments

Within 45 days of the Final Approval Order, EmblemHealth will pay: (i) Class Counsel attorneys' fees and reimbursement of litigation expenses approved by the Court; (ii) Rust the settlement administration costs; and (iii) Rust an amount sufficient to fund: (A) settlement payments to Qualified Claimants and (B) approved Service Awards. **Ex. 1**, ¶4(C). Within 10 days of receiving said payments, Rust will transmit the settlement shares and Service Awards (if applicable) to Qualified Claimants via wire or check. *Id.*, ¶4(F)(1). Settlement checks not negotiated within 90 days will be void and the gross amount reverted to EmblemHealth. *Id.*, ¶4(F)(4).

### E.    Eligible Employees

The eligible Rule 23 Class members are all workers employed by EmblemHealth as a "Grievance and Appeal Specialist" or "Senior Grievance and Appeal Specialist" and who were not

paid overtime compensation for all hours worked in excess of 40 in a week at any time during the Rule 23 Class Period (April 16, 2016, to August 5, 2025), and who did not submit a timely opt-out form. *Id.*, ¶1(b).

### F.    Release of Claims

Paragraph 5 of the Agreement contemplates the following with regard to releases:

- Each Named Plaintiff and Rule 23 Class member who has not opted-out will release EmblemHealth from any claim related to wage and hour violations under state or local law through the date of Final Approval.

- Each Qualified Claimant will release Emblem from any FLSA claims.

- Named and Opt-in Plaintiffs who seek a Service Award have executed a general release against EmblemHealth. *See* **Ex. 11** (General Release Template).

### G.    Attorneys' Fees and Litigation Costs

Class Counsel will separately apply for an award of attorneys' fees in the amount of 33.33% of the Total Settlement Amount, or **$1,264,874.00**. Class Counsel will also seek reimbursement of their documented litigation expenses of **$39,406.44**.   **Ex. 1**, at ¶4(E)(3)

### H.    Service Awards

The Named Plaintiffs and 23 Opt-in Plaintiffs are seeking enhanced Service Awards in recognition of services rendered to the Rule 23 Class, including, but not limited to: (i) commencing and discovering the claims in this suit; (ii) reviewing and approving pleadings and other filings; (iii) searching for and providing documents; (iv) reviewing documents and information provided by EmblemHealth; (v) meeting and communicating with Class Counsel at all phases of the litigation; (vi) responding to multiple rounds of discovery requests propounded by EmblemHealth; (vii) preparing and sitting for depositions, and then reviewing the transcripts for accuracy; (viii) preparing for, attending and actively participating in the mediation (in the case of the Named Plaintiffs); (ix) undertaking the risk of retaliation by participating in this action (although no

8

allegations of retaliation have been made); and (x) communicating with fellow putative Rule 23 Class members to ensure they have received Notice of the Settlement. Rahman Decl., ¶¶136-144. The two Named Plaintiffs seek Service Awards of **$40,000.00 each**, while 23 Opt-in Plaintiffs seek **$5,000.00 each**. **Ex. 1**, ¶4(E)(2).

## II.    CLASS AND COLLECTIVE ACTION SETTLEMENT IS APPROPRIATE

On August 5, 2025, the Court provisionally certified the Rule 23 Class. *See* Dkt. No. 105 at ¶2. The Court should now grant final certification because all Rule 23 certification requirements have been met.  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006).

### A.    The Settlement Is Fair, Reasonable, and Adequate and Meets All Requirements for FLSA Settlement Approval

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184 (W.D.N.Y. 2005). If the settlement was achieved through experienced counsels' arm's length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

In evaluating class settlements, courts generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are: (l) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range

of reasonableness of the settlement amount in light of the best possible recovery, and (9) the range

of reasonableness of the settlement amount in light of all the attendant risks of litigation. *Grinnell*,

495 F.2d at 463. In this case, the *Grinnell* factors weigh in favor of approval.

      FLSA claims generally cannot be released unless the resolution is judicially approved. *See*

*Cheeks*, 796 F.3d at 206 ("[S]tipulated dismissals settling FLSA claims with prejudice require the

approval of the district court or the [Department of Labor] to take effect."); *Wolinsky*, 900 F. Supp.

2d at 335.

> In determining whether the proposed settlement is fair and reasonable, a court
> should consider the totality of circumstances, including but not limited to the
> following factors: (1) the plaintiffs range of possible recovery; (2) the extent to
> which "the settlement will enable the parties to avoid anticipated burdens and
> expenses in establishing their respective claims and defenses"; (3) the seriousness
> of the litigation risks faced by the parties; (4) whether "the settlement agreement
> is the product of arm's-length bargaining between experienced counsel"; and (5)
> the possibility of fraud or collusion . . . . Given the purposes of the FLSA, factors
> that weigh against approving a settlement also include the following: (1) "the
> presence of other employees situated similarly to the claimant"; (2) "a likelihood
> that the claimant's circumstance will recur"; (3) "a history of FLSA non-
> compliance by the same employer or others in the same industry or geographic
> region"; and (4) the desirability of "a mature record" and "a pointed
> determination of the governing factual or legal issue to further the development
> of the law either in general or in an industry or in a workplace."

*Id.* The Settlement fully satisfies all the above criteria for the reasons set forth below.

      **1.   Litigation Through Trial Would Be Complex, Costly and Long (*Grinnell Factor 1 and Wolinsky Factor 2*)**

      By reaching a favorable settlement prior to more protracted litigation, extensive class

discovery, rounds of complex motion practice, and trial and appeals, the Parties seek to avoid

significant expense and delay in establishing their respective claims and defenses, ensuring a

substantial recovery for the Rule 23 Class. "Most class actions are inherently complex and

settlement avoids the costs, delays and multitude of other problems associated with them." *In re*

*Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is

no exception.

Here, absent resolution, both sides would proceed with lengthy and significant motion practice: Plaintiffs would move for class certification, while EmblemHealth would move for decertification of the FLSA Collective. Rahman Decl., ¶¶47-51_. Defendants have colorable arguments against class certification which could arguably be supported by, *inter alia*, deposition testimony suggesting that the G&A Specialists' level of independent judgment and discretion differed, as well as the number of hours they were required to and did work each week. *Id*.

If Plaintiffs' motion for class certification is denied, then, invariably, Defendants' motion for decertification would be successful, and the Named Plaintiffs and Opt-in Plaintiffs would have to proceed with their claims on individual bases in separate actions. *Id*. An adverse decision would likely be appealed, causing even more delay and use of the Parties' and the courts' resources. *Id*.

Moreover, absent resolution, EmblemHealth would move for summary judgment on the basis that G&A Specialists are exempt under the "administrative" exemption, and would arguably have colorable arguments seemingly supported by deposition testimony suggesting that G&A Specialists exercise independent judgment and discretion on matters of significance, and documents such as job descriptions, resumes, and performance evaluations that appear to support the "administrative" exemption's application. *Id.*, ¶¶52-53. An adverse decision would also likely be appealed. *Id*.

The issues in this case are complex, fact-intensive, and novel. Class Counsel is unaware of any other litigations in which Grievance and Appeals Specialists (or equivalent roles) at a health insurance company have alleged overtime misclassification. *Id.*, ¶102. Realistically, given the fact intensive nature of this case and the sizable record (*i.e.*, nearly 35 depositions, generating thousands of pages of testimony, and over 5,000 pages of document productions), it would likely

take approximately one year to get through the class certification and summary judgment motion practice stage, resulting in another year or more of delay for hundreds of G&A Specialists alleging unpaid wage claims dating back to 2016. *Id.*, ¶103.

Appeals aside, continued litigation would be complex and time consuming. Absent settlement, the Parties would have engaged in class discovery, including the productions of thousands of pages of documents and data for all 180 putative Rule 23 Class members over a nine-year period. *Id.*, ¶104.

If Defendants did not succeed in their anticipated summary judgment motion, the case would have proceeded to trial which would have spanned several weeks (if not months) as dozens of G&A Specialists, and no less than ten EmblemHealth managers and executives, would have needed to testify given the contested nature of material facts relevant to this case. *Id.*, ¶105. Ultimately, it would have been up to a jury to decide whether Plaintiffs were entitled to overtime, an inherently risky and uncertain proposition for all Parties. *Id.*, ¶106.

Even after trial, any judgment likely would be appealed, further extending the litigation. *Id.*, ¶107. Settlement, on the other hand, makes monetary relief available in a prompt, efficient and relatively risk-free manner. Therefore, the first *Grinnell factor* and second *Wolinsky* factor weighs in favor of final approval.

### 2.  <u>The Reaction to the Settlement Has Been Positive (*Grinnell Factor 2*)</u>

"[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Dale Global Techs. Corp.*, 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002). Here, the Notice disclosed the amount of the Settlement, reductions to the Settlement Amount (*i.e.*, for claims administration fees, Service Awards, and attorneys' fees and litigation expenses), and provided an estimate of the amount each Rule 23 Class member

would receive. Rahman Decl., ¶82; **Ex. 7**. The Notice also informed putative Rule 23 Class members that they could object to or exclude themselves from the Settlement. *Id.*

Out of the 180 putative Rule 23 Class members, 118 have submitted valid Claim Form and Releases (claiming 83% of the Net Settlement Fund), one has opted-out, and none have filed an objection. **Ex. 6**, ¶¶23-25. In other words, the reaction to the Settlement has been resoundingly positive, favoring final approval. *See*, *e.g.*, *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 08819 (GEL), 2009 WL 5841128, at *2 (S.D.N.Y. July 27, 2009) (finding settlement fair, reasonable, and adequate where no class member objected and one class member opted out); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494 (RLE), 2015 WL 2255394 at *4 (S.D.N.Y. May 7, 2015) ("The fact that the vast majority of class members neither objected not opted out is a strong indication of fairness.").

### 3. Sufficient Discovery Has Taken Place to Allow the Parties to Resolve the Case Responsibly Following Arm's Length Bargaining Between Experienced Counsel Absent Any Fraud or Collusion (*Grinnell Factor 3 and Wolinsky Factors 4 and 5*)

The proposed settlement is the product of arm's-length negotiations between the Parties and their experienced counsel. The fact that the litigation was aggressively and expeditiously litigated by Class Counsel who is experienced in wage-and-hour matters, eliminates any danger of fraud or collusion.

As described above, the Parties conducted substantial discovery which was more than sufficient to resolve this action responsibly. The proper question to ask is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement ... [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176. Here, the discovery exchanged more

than meets this standard, which included:

- Detailed compensation information for the Named Plaintiffs and opt-in party plaintiffs;

- Job descriptions and other relevant correspondence and documents;

- Spreadsheets setting forth time stamps for Plaintiffs' and Opt-in Plaintiffs' work activities, which helped approximate the number of hours they worked; and

- Sworn deposition testimony from the two Named Plaintiffs and 23 Opt-in Plaintiffs as to the numbers of hours they worked each week and nature of their work, in addition to deposition testimony from six EmblemHealth executives/managers as to Defendants' position as to the work performed and hours spent working by G&A Specialists.

Rahman Decl., ¶¶32-40. All this information and data produced by EmblemHealth (and more) was analyzed by Class Counsel with involvement from the Named Plaintiffs and Opt-in Plaintiffs. *Id.,* ¶33. Class Counsel was able to reasonably approximate, *inter alia,* (i) average income earned by Rule 23 Class members, (ii) estimated unpaid overtime wages for and hours worked by Rule 23 Class members, (iii) estimated number of workweeks worked by Rule 23 Class members; and (iv) estimated potential liquidated damages. *Id.*, ¶60. These figures enabled Class Counsel to determine a reasonable and reliable estimate of class-wide damages. *Id.*, ¶61.

Of course, EmblemHealth has articulated potentially strong defenses that — while Class Counsel felt confident could be overcome — needed to be considered, including, but not limited to: (i) G&A Specialists were properly classified as "administrative" employees based on their duties and responsibilities; (ii) any misclassification was done in good faith reliance on Department of Labor guidance and applicable law; (iii) G&A Specialists did not work the volume of hours alleged in the Complaint; and (iv) EmblemHealth did not act willfully, and therefore FLSA claims are subject to a two year statute of limitations. *Id.*, ¶62.

The Parties' respective counsel each submitted lengthy, detailed mediation briefs that explored the merits and scope of damages. *Id.*, ¶¶58-59. The Parties came to each mediation with a sense of and appreciation for each side's legal and factual positions, and amount of time further

protracted litigation would require. *Id.*, ¶63. Although the Parties could theoretically obtain additional information if this case proceeded to class discovery, it is unlikely that further discovery would have changed the Parties' analysis given that a large sample size of discovery had already been exchanged. *Id.*, ¶64; *see Frank,* 228 F.R.D. at 185 (approving settlement "in relatively early stages of discovery" where parties exchanged extensive information regarding defendant's time and pay practices and where counsel's negotiations, while "cooperative," had "been in no way collusive."). Moreover, experienced wage/hour mediator Stephen Sonnenberg of JAMS presided over two in-person mediations and subsequent continued negotiations and proposed the settlement amount, which further demonstrates the fairness of the process and outcome. *Id.*, ¶69. The Settlement represents a fair compromise that enables the parties to avoid the burden, expense and uncertainty of continued litigation in favor of a known result. Against this backdrop, the Settlement satisfies *Grinnell* factor 3 and *Wolinsky* factors 4 and 5 and thus favors final approval.

### 4. Plaintiffs Would Face Serious and Real Risks at Trial (*Grinnell Factors 4 and 5 and Wolinsky Factor 3*)

Although the Named Plaintiffs and Class Counsel believe the case is strong, it is subject to considerable risk. Plaintiffs would have to overcome EmblemHealth's defenses, as articulated above. While Plaintiffs believe they would ultimately establish EmblemHealth's liability, Class Counsel is experienced and realistic and understands that the outcome at trial and inevitable appeals process are inherently uncertain in terms of outcome and duration. *Id.*, ¶108. Indeed, if EmblemHealth is able to establish that it correctly applied the "administrative" exemption to G&A Specialists, then the Rule 23 Class members will recover *nothing*. *Id.*, ¶109. Plaintiffs carry the burden of establishing that they consistently worked more than *de minimis* hours beyond 40 hours each week, which, given the absence of contemporaneous records documenting their actual work hours, will likely come down to a credibility determination – another inherently risky proposition

in a jury trial. *Id.*, ¶110. The proposed Settlement alleviates these and other uncertainties and risks. This factor, thus, weighs in favor of final approval.

### 5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell Factor 6 and Wolinsky Factors 2 and 3*)

The risk of decertification and/or obtaining and maintaining class certification through trial is also present. EmblemHealth has argued throughout this litigation that individualized inquiries into Plaintiffs' duties will support decertification and preclude certification. *Id.*, ¶¶111-112. Although Class Counsel disagrees, the issues in this case are novel, with no known precedent specifically applying to G&A Specialists at other health insurers prevailing on overtime misclassification claims. *Id.*, ¶113.

EmblemHealth would likely point to evidence in the record that suggests, *inter alia*, (1) the degree of independent judgment and discretion differed among G&A Specialists, (2) the nature of their work materially differed, (3) the level of supervision differed, (4) the amount of time working differed, (5) the frequency with which written guidelines or manuals were consulted differed; and (6) the nature of appeals and grievances they handled differed, including their monetary values. *Id.*, ¶114. Any or all these differences could undermine a motion for class certification. *Id.* ¶115.

The ultimate determination as to whether class and/or collective treatment is appropriate would be reached only after extensive and costly motion practice and discovery. *Id.*, ¶116. Risk, expense and delay permeate the class certification process, which settlement eliminates. Accordingly, this factor favors final approval.

### 6.   EmblemHealth's Ability to Withstand a Greater Judgment Is Not a Bar to the Settlement (*Grinnell Factor 7*)

Here, Class Counsel and the Named Plaintiffs are aware that EmblemHealth, while a

relatively modest-sized employer, can pay virtually any likely judgment they can obtain and still believe that the Settlement is in the best interests of the Rule 23 Class members given all the attendant risks and benefits with settling at this stage. *Id.*, ¶117. Accordingly, this factor also favors final approval.

### 7. The Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell Factors 8 and 9 and Wolinsky Factor 1*)

EmblemHealth has agreed to settle this case for a maximum total of **$3,795,000**. The Settlement amount represents a fair value to the Rule 23 Class members given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, succeeded on all claims at trial, survived decertification, and survived all appeals.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank,* 228 F.R.D. at 186. "Instead, 'there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* Furthermore, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.,* No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *5 (S.D.N.Y. May 14, 2004).

Based on Class Counsel's estimates of the Rule 23 Class members' total number of workweeks during the Rule 23 Class Period (approximately 42,225) and average weekly wage rate (approximately $1,000/week), the Settlement Amount equates to each Rule 23 Class member working **9 hours of overtime each and every workweek**. Rahman Decl., ¶118. In contrast, a reasonable, realistic range of Rule 23 Class members' possible recovery, based on a reasonable

finding that they each worked, on average, **7.5 overtime hours for 75% of their workweeks, is between $2.5 million (without liquidated damages) and $5 million (with liquidated damages).** *Id.*, ¶119. Of course, these numbers are not discounted for the risks Plaintiffs would face were this case to continue to the class certification and summary judgment stages. *Id.*, ¶120.

The Named Plaintiffs have been advised of the potential upside of proceeding on the merits but believe the settlement at this stage is in the best interests of the Rule 23 Class members. *Id.*, ¶124. Class Counsel agrees. *Id.*, ¶125. Moreover, experienced wage/hour mediator Stephen Sonnenberg of JAMS presided over two in-person mediations and subsequent continued negotiations and proposed this settlement amount, which further demonstrates the fairness of the process and outcome. *Id.*, ¶69. Therefore, this factor also weighs in favor of final approval.

### 8. Presence of Other Employees Situated Similarly to Plaintiffs, the Likelihood that Plaintiffs' Circumstance Will Recur, and a History of FLSA Non-Compliance By Defendants (*Wolinsky* Counter-Factors 1, 2 and 3)

The presence of other employees situated similarly to Plaintiffs should not weigh against approval of the Settlement, as such employees have been provided ample opportunity to either submit a Claim Form and receive a payment from the settlement fund or exclude themselves and preserve their claims. There is also not a particularly strong likelihood that Plaintiffs' circumstances will recur as EmblemHealth is on notice of the nature of Plaintiffs' misclassification claims and are cognizant of the potential risks of engaging in questionable wage practices. If anything, the significant monetary settlement should incentivize EmblemHealth to ensure that Plaintiffs' and the Rule 23 Class members' circumstances do not recur.

Moreover, as this is the only FLSA action that has ever been brought against EmblemHealth by G&A Specialists, it does not appear that Defendants have a history of "FLSA non-compliance." *Id.*, ¶¶133-135.

9.    **Desirability of a Mature Record and the Development of the Law (*Wolinsky* Counter-Factor 4)**

Since the parties engaged in substantial discovery prior to reaching a class resolution with the assistance of an experienced neutral, there is not a compelling desire for a more mature record. Further class discovery will not likely change the parties' positions. *Id.*, ¶¶133-135. Moreover, while counsel is unaware of other lawsuits that have challenged the classification of G&A Specialists at other health insurance companies, there have been other misclassification actions brought by employees who, like G&A Specialists, perform an "investigative" function with regard to insurance claims and coverage determinations. *See Hinely v. Am. Family Mut. Ins. Co.*, 275 F.Supp.3d 1229 (D. Colo. 2016) (claims adjusters at property and casualty insurance company); *Calderon v. GEICO*, 908 F.3d 111 (4th Cir. 2015) (security investigators in GEICO's Claims Department); *Clark v. Centene*, 656 Fed. Appx. 688 (5th Cir. 2016) (case managers at managed care company that helps coordinate health care coverage). As such, there is not a compelling need to advance the development of this particular area of law that outweighs the benefits of settlement.

B.    **The Settlement Class Meets the Requirements of Rule 23(a)**

For settlement purposes only, the parties seek to certify the following proposed Rule 23 Class:

> All workers employed by EmblemHealth as a "Grievance and Appeal Specialist" or "Senior Grievance and Appeal Specialist" and who were not paid overtime compensation for all hours worked in excess of 40 in a week at any time from April 8, 2016 to August 5, 2025, and who have not filed timely opt-out forms.

The proposed Rule 23 Class meets all Rule 23 standards. Under Rule 23(a), a class action may be maintained if all prongs of Rule 23(a) are met, and one prong of Rule 23(b).

Rule 23(a) requires:

(1)    the class be so numerous that joinder of all members is impracticable;

(2)    questions of law or fact common to the class;

(3)    claims or defenses of the representative parties that are typical of claims or defenses of the class; and

(4)    the representative parties to fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Fed. R. Civ. P. 23(b)(3) requires the court to find that:

questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## 1.    <u>Numerosity</u>

There are **<u>179 Rule 23 Class members</u>**, which is more than sufficient for numerosity. *See*, *e.g.*, *Novella v. Westchester County*, 443 F. Supp. 2d 540, 546–47 (S.D.N.Y. 2006) (class of 24 sufficient).

## 2.    <u>Commonality</u>

The commonality requirement tests "whether the named plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benevolent Ass 'n, v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).

The claims of the Named Plaintiffs and Rule 23 Class members clearly have several common issues, including: (i) whether they were exempt from overtime, (ii) whether they worked over 40 hours per week, and (iii) whether EmblemHealth acted in good faith in not paying overtime. Rahman Decl., ¶126. Courts have found similar questions to establish commonality. *See*, *e.g.*, *Aponte v. Comprehensive Health Mgmt. Inc.*, No. 10 Civ. 4825 (PKC), 2011 WL 2207586, at *9 (S.D.N.Y. June 2, 2011) (commonality where common questions included "whether defendant

20

has failed to compensate class members for work performed in excess of forty (40) hours per workweek and whether defendant has a policy of misclassifying its Benefit Consultants as exempt from coverage of the overtime provisions of the NYLL").

### 3. <u>Typicality</u>

Rule 23 requires the claims of the representative be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank,* 228 F.R.D. at 182. "Minor variations underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936- 37 (2d Cir. 1993). Here, Named Plaintiffs have alleged their claims arise from the same factual and legal circumstances of the Rule 23 Class members' claims in that they: (i) were employed in the same job titles; (ii) had similar job duties and responsibilities; and (iii) were paid by EmblemHealth under the same wage practices and policies. Rahman Decl., ¶127.

### 4. <u>Adequacy of Named Plaintiffs</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In part, "the adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.,* No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007). Here, there has been no assertion that Named Plaintiffs have interests antagonistic to or at odds with those of Rule 23 Class members. Rahman Decl., ¶132. Rather, Named Plaintiffs have shown their commitment to the Rule 23 Class not only by engaging experienced counsel to litigate an issue that had never been challenged before, but by: (i) reviewing and approving pleadings and other filings, (ii) searching

for and providing documents, (iii) reviewing documents and information provided by Defendants, (iv) meeting and communicating with Class Counsel at all phases of the litigation, (v) preparing and sitting for all-day, in person depositions, traveling from Florida to New York City at their own cost; (vi) preparing for, attending, and actively participating in the mediation sessions; (vii) undertaking the risk of retaliation; (viii) communicating with other putative Rule 23 Class members about their claims and this Settlement. *Id.*, ¶¶133; 137-138.

Additionally, Plaintiffs are represented by counsel who is very experienced in class actions and labor and employment law. *Id.*, ¶¶145-154. In evaluating the adequacy of Class Counsel, the Court should evaluate: (i) "the work counsel has done in identifying or investigating potential claims;" (ii) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (iii) "counsel's knowledge of the applicable law;" (iv) "the resources that counsel will commit to representing the class;" and (v) any other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(A) and (B).

Class Counsel, Filippatos PLLC, and specifically lead counsel, partner Tanvir H. Rahman, has met these criteria. Class Counsel has done substantial work identifying, investigating and prosecuting Plaintiffs' claims. *Id.*, ¶¶145-146. Additionally, Class Counsel has substantial experience prosecuting and resolving employment class actions, including wage-and-hour class actions, is well-versed in the substantive law at issue, and is well-qualified to represent the interests of the class. *Id.*, ¶¶147, 152-153. Courts have approved Mr. Rahman as class counsel in similar wage-and-hour actions. *Id.* at ¶148; *see, e.g.*, *Raniere, et al. v. Citigroup Inc., et al.*, 310 F.R.D. 211 (S.D.N.Y. Sep. 29, 2015) (approving Mr. Rahman, while at previous firm, Wigdor LLP, as class counsel and stating "Class Counsel is well-regarded in this District as skillful and effective

class-action advocates"); *Cordero, et al. v. New York Institute of Technology*, No. 12 Civ. 3208 (GRB), Dkt. Nos. 60, 72 (E.D.N.Y. Mar. 17, 2016) (same); *Munir, et al. v. Sunny's Limousine Service, Inc., et al.*, No. 13 Civ. 01581 (VSB), (Dkt. Nos. 145, 155 (S.D.N.Y. Jan. 8, 2015) (same).

Finally, as is detailed in Plaintiffs' accompanying motion seeking the approval for attorneys' fees and reasonable litigation costs, Class Counsel has committed substantial resources in prosecuting and settling this action. Rahman Decl., **Ex. 12** (Billing Records); **Ex. 13** (Expense Records). For the foregoing reasons, the adequacy requirement is met, and Filippatos PLLC should be affirmed as class counsel.

**D**.    **Certification Is Proper Under Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc.*, 521 U.S. at 623.

**1.    Common Questions Predominate**

To establish predominance, plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *Cordes & Co. Min. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery,* 227 F.R.D. 159, 173 (N.D.N.Y. 2005). That a defense "may arise and affect different class members differently does not compel a finding that individual issues predominate over common ones." *Noble v. 93 Univ. Place Corp.,* 224 F.R.D.

330, 339 (S.D.N.Y. 2004). Where claims are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York,* 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Named Plaintiffs assert that Rule 23 Class members' core factual allegations and legal theories predominate over any factual or legal variations among Rule 23 Class members. *See Torres v. Gristede's Corp.,* No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages."). The calculation of damages for each Rule 23 Class member would certainly require some degree of individualized inquiry, but such inquiries generally do not defeat the Rule 23(b)(3) predominance requirement. *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015) (individualized damages determinations do not preclude class certification under Rule 23(b)(3)).

## 2. **Class Action Is a Superior Mechanism**

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to superiority, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring individual actions; and the desirability of concentrating the litigation of the claims in the forum. Class adjudication by settlement is superior to individual adjudication because it will conserve judicial resources and is more efficient for Rule 23 Class members, rather than proceeding with several dozen individual trials. Rahman Decl., ¶128; *Khait v. Whirlpool Corporation,* 2010 WL 2025106, at *3 (E.D.N.Y. Jan. 20, 2010). Concentrating the litigation in

this Court for settlement is desirable because EmblemHealth is headquartered in and conducts business, and many Class Members reside, within this jurisdiction. *Id.*, ¶129.

Moreover, many Rule 23 Class members simply do not have resources to litigate their claims individually. *Id.* ¶130. Employing the class device in the context of this settlement avoids waste and delay and potentially repetitive proceedings and inconsistent judgments. *Id.*, ¶131.

In addition to their individualized allocations, the Named Plaintiffs and 23 Opt-in Plaintiffs respectfully request approval of Service Awards in recognition of the services they rendered on behalf of the Rule 23 Class. Putative class members were notified of these Service Awards requests in the Notice and none have objected. *See* **Ex. 7**; **Ex. 6**, ¶24. Named Plaintiffs Cordova and Casasus are seeking approval for Service Awards of $40,000 each, while the Opt-in Plaintiffs (identified by name at **Ex. 1**, ¶4(E)(2)) seek approval for Service Awards of $5,000 each.

In examining the reasonableness of service awards, courts consider: (1) the time and effort expended by the class representatives during the litigation; (2) any burdens sustained by the class representatives, including personal risk; and (3) the ultimate recovery. *Roberts v. Texaco, Inc.*, 979 F.Supp. 185, 200 (S.D.N.Y. 1987). Courts recognize the important factual knowledge that class representatives bring to employment class actions, including information about employer policies and practices that affect wages. *See Frank*, 228 F.R.D. at 187-88 (recognizing the important role that class representatives play as the "primary source of information concerning the claims," including by responding to counsel's questions and reviewing documents).

These Service Awards are reasonable in light of the significant time and effort the Named Plaintiffs and Opt-in Plaintiffs expended in furtherance of the class investigation and settlement. Named Plaintiffs Cordova and Casasus have, without a doubt, been integral in the prosecution and successful resolution of the litigation and have rendered significant services to the Rule 23 Class,

25

which included, but was not limited to: (i) engaging Class Counsel to institute suit over an issue that had been ongoing for years, if not decades; (ii) reviewing and approving pleadings and other filings, (iii) searching for and providing documents, including in response to multiple sets of discovery requests, (iv) reviewing documents and information produced by Defendants, (v) meeting and communicating with Class Counsel at all phases of the litigation, (vi) preparing and sitting for all-day, in person depositions, traveling from Florida to New York City at their own cost, and then reviewing their transcripts for accuracy; (vii) preparing for, attending, and actively participating in the mediation sessions; (viii) undertaking the risk of retaliation; and (ix) communicating with other putative Rule 23 Class members about their claims and this Settlement, and ensuring their receipt of the Notice. Rahman Decl., ¶136-137. Furthermore, the Named Plaintiffs were both employed at EmblemHealth when this case was filed and have borne the burdens of bringing this case, including the risk of losing the litigation, the risk of having costs assessed against them in the event of a loss, and the perceived risk of retaliation. *Id.*, ¶138. Without their efforts, this case would not have been brought, and this settlement would not have been reached. *Id.*, ¶139.

Likewise, each of the 23 Opt-in Plaintiffs rendered meaningful services to the Rule 23 Class, which included, but was not limited to: (i) searching for and providing documents and information in response to multiple sets of discovery requests, (ii) reviewing documents and information provided by Defendants, (iii) meeting and communicating with Class Counsel at critical phases of the litigation, (iv) preparing and sitting for lengthy depositions, and then reviewing the transcripts for accuracy, (v) undertaking the risk of retaliation; and (vi) communicating with other putative Rule 23 Class members about this Settlement to ensure their receipt of the Notice. *Id.*, ¶140. Their efforts crucially enabled the Parties and counsel to

meaningfully assess the strengths and weaknesses of the claims and potential damages at issue, which significantly contributed to the Settlement. *Id.*, ¶141. They too faced the risk of having costs assessed against them in the event of a loss and the perceived risk of retaliation. *Id.*, ¶142. In the employment context, where some workers have been blacklisted if they are considered troublemakers, class representatives can be vulnerable to retaliation. *See Silberblatt v. Morgan Stanley*, 524 F. Supp. Ed 425, 435 (S.D.N.Y. 2007). Moreover, Named Plaintiffs and the Opt-in Plaintiffs faced the risk that new employers learn that they have brought claims against an employer and retaliate in the hiring process. Rahman Decl., ¶143.

Finally, the Service Awards, combined, comprise approximately just 5% of the Total Settlement Amount ($195,000 out of $3,795,000) (*Id.*, ¶144), which is reasonable and in line with service payments approved by other courts. *See Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ($10,000 service awards to four plaintiffs from $440,000 settlement, comprising 9% of settlement); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *10 (S.D.N.Y. Dec. 13, 2011) (service awards of up to $45,000, or 10% of $495,000 fund); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (service awards totaling $50,000, or 17% of $300,000 fund); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862 at *7 (E.D.N.Y. Feb. 18, 2011) (service awards of $30,000); *Mentor v. Imperial Parking Sys., Inc.*, No. 05 Civ. 7993 (WHP), 2010 WL 5129068 at *1-2 (S.D.N.Y. Dec. 15, 2010) ($40,000 service award); *Wright v. Stern*, 553 F. Supp. 2d 337, 342 (S.D.N.Y. 2006) ($50,000 service awards to 11 named plaintiffs in $11.8 million settlement (4.6% of settlement)); *McBean v. City of New York*, 233 F.R.D. 377, 391 (S.D.N.Y. 206) (service awards from $25,000 to $35,000 out of $2.8 million fund); *Glass v. UBS Fin. Services, Inc.*, No. 06 Civ. 4068 (MMC), 2007 WL 221862, at *17 (N.D.

Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ($25,000 to each class representative); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (service award of $25,000 reasonable based on plaintiff's participation, including discussions with class counsel regarding pleadings, discovery demands, discovery responses, memoranda of law on class certification, preparation towards and attending deposition and reviewing deposition transcript, and conferring with class counsel during settlement negotiations). Therefore, the request for Service Awards is reasonable and should be approved.

## CONCLUSION

For the reasons set forth above, the Parties respectfully jointly request that the Court grant final approval of the attached proposed Settlement Agreement, certify the Rule 23 Class, and approve Service Awards.

Dated: December 4, 2025
      New York, New York

Respectfully submitted,


Filippatos PLLC                          Cozen O'Connor LLP

By: ____/s/____                          By: _____/s/_____
Tanvir H. Rahman                         Michael C. Schmidt
Parisis G. Filippatos                    3 World Trade Center
199 Main Street                          175 Greenwich Street, 55th Floor
White Plains, NY 10601                   New York, NY 10007
Telephone/Fax: (914) 984-1111            Telephone: (212) 453-3937
trahman@filippatoslaw.com                Facsimile: (866) 736-3682
pgf@filippatoslaw.com                    mschmidt@cozen.com

*Counsel for Plaintiffs and Proposed Class*    *Counsel for Defendants*
*Counsel*



## Certification of Compliance With Word Limit

I, Tanvir Rahman, counsel for Plaintiffs in the above-captioned matter, pursuant to Rule 5(B) of the Individual Rules and Practices in Civil Cases of The Honorable Jennifer H. Rearden, United States District Judge, certify that this memorandum of law complies with the 8,750 word limit.  The number of words in this document, exclusive of the caption, table of contents, table of authorities, signatures blocks, and this certificate is 8655.

_____
Tanvir H. Rahman

29